# CHARLESTON.

## ARKLE *v*. BOARD OF COM'RS.

Submitted September 9, 1895—Decided Dec. 7, 1895.

1. CONSTITUTIONAL LAW—COUNTY COURTS—JUSTICE OF THE PEACE.

   Under the provisions of our Constitution (article viii, s. 24) county courts are authorized to exercise such other powers and perform such other duties, not of a judicial nature, as may be prescribed by law; and section 7 of chapter 7 of the Code, so far as it authorizes the county court to hear the charges preferred against a justice of the peace, after having him summoned to answer such charges, and to remove him from office when a proper case is made, is judicial in its nature, and to that extent said section is unconstitutional.

2. JUDICIAL ACTS.

   An act done in the exercise of judicial power—an act performed by a court touching the rights of parties or property brought before it by voluntary appearance or by prior action of ministerial officers—is a judicial act.

3. JUDICIAL ACTS—JUDICIAL POWER.

   When a judge or court of justice, in a suit between parties, ascertains facts, ascertains and applies thereto the law, decides the controversy, and renders judgment, judicial power has been exercised, and such exercise is a judicial act.

JOHN A. HOWARD and JOHN J. CONIFF for plaintiff in error, cited Code, c. 7, s. 7; Const. Art. V; Id. Art. IV, ss. 6, 8; Id. Art. VIII, ss. 1, 17, 24; 6 W. Va. 575, 576, 590, 591, 592, 594; 28 W. Va. 264; Acts, 1863, c. 78, s. 13; Acts, 1872-3, c. 121; 44 Ohio St. 109.

ROBERT WHITE and W. W. ARNETT for defendant in error, cited Const. Art. IV, s. 6; Id. Art. VIII, s. 24; Id. Art. IX, s. 4; Id. Art. X, s. 1; Code, c. 7, s. 7; 27 W. Va. 253; 3 W. Va. 367; 39 La. An. 161; 33 Conn. 115; 14 Am. & Eng. Enc. Law, 5, note; 15 Id. 621; 31 W. Va. 608, 609, 614, 616, 618; 135 U. S. 471; 38 W. Va. 338; 39 W. Va. 142, 179; 8 B. Mon. 672; 36 N. J. L. 101; 27 N. J. L. 203; 25 Pa. St. 28; 77 Me. 224, 232; 53 Mich. 392; 98 Mich. 104, 361; 45 Wis. 610, 613; 79 N. Y. 588, 589; 39 Tex. 1; 3 Porter (Ala.) 369; 44 Ohio St. 98, 118, 132-4; 100 Ill. 94.

ENGLISH, JUDGE:

George Arkle, a justice of the peace of Ohio county, was summoned to appear before the Board of Commissioners who constitute the County Court of Ohio county, to answer charges preferred against him in writing, charging him with misconduct in office. Said county court proceeded with the investigation of each of the charges brought against him, and during the pendency of said investigation said George Arkle obtained a rule in prohibition from one of the judges of the Circuit Court of said county, requiring a cessation of said proceedings against him until the further order of the court. The said board of commissioners then moved the court to discharge the rule, which motion was overruled, and said rule was made absolute.

In the affidavit relied on by said Arkle in support of the rule, he bases said application upon the alleged ground that section 7 of chapter 7 of the Code of West Virginia, under which said investigation was ordered and entered into, is unconstitutional and void.

On the 12th day of September, 1894, the case was heard upon the petition, the charges mentioned therein and filed therewith, and upon the rule in prohibition awarded by the judge of said circuit court in vacation, which had been served upon the president of the said board of commissioners of Ohio county, and upon the motion of said board of commissioners to discharge said rule, upon the ground that the said petition and charges filed do not disclose sufficient cause to warrant the issuing of a writ of prohibition as prayed for, which motion, upon consideration, was overruled by the court, and said board of commissioners by its counsel excepted, and it was ordered that the said rule so awarded be made absolute, and that a writ of prohibition be awarded, directed to said board of commissioners, commanding it to cease all other and further proceedings upon the charges aforesaid made against said George Arkle, justice of the peace of said county, and said board of commissioners again excepted, and applied for and obtained this writ of error.

The sole question we are to determine in this case is

whether that portion of section 7 of chapter 7 of the Code which provides for the removal of county and district officers, which reads as follows: "Such removal shall be made * * * in case of the clerk of the county court, county superintendent of free schools, assessor, justice of the peace and constable by the county court of the county"—is constitutional.

Section 6 of Article IV of the Constitution provides that "all officers elected or appointed under this constitution may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty or gross immorality in such manner as may be prescribed by general laws," *etc.* But we find that in section 24 of article 8 of the Constitution this limitation is placed upon the powers of the county court, after enumerating various powers of said court: "Such courts may exercise such other powers and perform such other duties not of a judicial nature as may be prescribed by law." The question, then, which we encounter at once is whether this proceeding for the removal of said George Arkle from the office of justice of the peace of said county was a judicial proceeding. Charges were preferred against him, he was cited to appear and answer the same, and the court was proceeding to hear and determine the question of his amotion from office, when the rule in prohibition was awarded against said county court. In the third volume of the American & English Encyclopedia of Law, at page 693, under the head of "Legislation Regulating Courts, Judges, and Jurisdiction," it is said: "Where the constitution establishes a particular court and fixes its jurisdiction, it is not competent for the legislature to pass any statute abolishing the court or either enlarging or abridging its jurisdiction." In the case of *Montross* v. *State*, 61 Miss. 429, it was held that "the legislature can not confer, upon courts established by it, jurisdiction exclusive of that which by the constitution is given to courts established by the constitution itself, nor can it delegate to such courts the power to declare what shall be the punishment for offenses against the laws of the state." Wells, Jur. p. 55, says: "The essential distinction between constitutional and

statutory courts is that the former are not subject to the
will of the legislature, so far as their constitutional jurisdic-
tion extends, whereas the latter may be restricted or abol-
ished, as well as created and enlarged, at pleasure." In the
case of *Mayer* v. *Adams*, 27 W. Va. 253, which was a con-
tested election case, Green, J., in delivering the opinion,
of the Court, quotes from *Peck* v. *Holcombe*, 3 Port. (Ala.)
329, as follows: "A declaration of the vacancy of an office
by a court competent to make the declaration is a judicial
act." And, referring to the case (3 Port. 329) we find the
syllabus reads thus: "Where a judge of a county court, un-
der the act of 1829, declares the office of tax collector va-
cant, such declaration is a judicial, conclusive act, and can
not, while unreversed, be questioned by proof that the tax
collector had his bond ready, but that the judge was ab-
sent." Again, the law of this point is stated thus by Throop
Pub. Off. § 346: "The power to remove a state officer has
been regarded in New Jersey as judicial, and, on that
ground, one which can not be constitutionally exercised by
the governor, but only by the court of impeachments. But,
it has been elsewhere regarded as ministerial, and thus ca-
pable of being conferred by the legislature upon minister-
ial officers, in the absence of constitutional restrictions; al-
though where specific causes are required, and a notice and
a hearing must be had to render a removal lawful, the re-
moving officer or body proceeds in a judicial manner, so
that the decision may be reviewed by the courts." It is
said, in section 396 of the same work: "So it has been held
that, where a statute gives a power of removal 'for cause,'
without any specification of the causes, this power is of a
discretionary and judicial nature," *etc.* So, in the case of
*Board* v. *Pritchard*, 36 N. J. Law, 101, it was held that "the
right to remove a state officer for misbehaviour in office
does not appertain to the executive office. Such act is ju-
dicial, and belongs to the court of impeachments." Upon
this point the supreme court of Michigan, in the case of
*Dullam* v. *Willson*, 53 Mich. 392 (19 N. W. 112) holds (sec-
ond point of syllabus) that "How. Ann. St. § 651, permit-
ting the governor to remove any state or county officer,
except the state treasurer and judges, is void, because, at

the time it was adopted, the governor had no judicial power under the constitution," clearly implying that judicial power is required to remove such officers; and we find that Chief Justice Marshall, in delivering the opinion of the court in the case of *Page* v. *Hardin*, 8 B. Mon. 655 (the same being the case in which the governor had declared the office of secretary of state vacant, and appointed a successor, and the question was raised by a *mandamus* against the auditor to require him to issue a warrant for salary), says, on page 655: "The executive department and all of its officers are as much bound by the constitution and laws as the legislative, and have no more power to violate the rights of individuals secured by the laws. The power, obviously judicial, of ascertaining and enforcing the legal rights of individuals, is, in effect, the power of protecting those rights from violation by the act or authority either of individuals or of the legislative or executive departments, and it necessarily involves the function of deciding, in every case properly before it, what are the legal rights of the parties, and how far, in point of law (that is, under the constitution and laws) those rights have been affected by any and every act relied on for their support or destruction." In the same opinion, on page 657, that distinguished jurist says: "The judiciary pretends to no direct control over the action of the legislature or of the supreme executive; but it may decide upon the validity of the acts of either affecting private rights, and by the writ of *mandamus* it may coerce a ministerial officer, though of the executive department, to the performance of a legal duty for the effectuation of a legal right. It must decide all questions essential to a determination of the rights of the parties in a judicial procedure coming properly before it."

We are aware of no right which is clung to with more tenacity, and about which more feeling is engendered, than in regard to the tenure of public office; and in determining the questions arising upon these contests, intricate questions of law must frequently present themselves for determination. An officer has a right to an office to which he has been fairly and legally elected, and to the emoluments arising therefrom, and he should not be deprived of them

without an opportunity of raising all proper legal questions for his protection, and having them judicially determined. In the case of *Fleming* v. *Commissioners*, 31 W. Va. 609 (8 S. E. 267), this Court held that "while many of the acts of the commissioners, sitting as a board of canvassers after an election, are merely ministerial, they are not all so; and where such tribunal, clothed by the statute with both ministerial and judicial powers, is merely exercising its ministerial functions, to its action in such matters prohibition will not lie, but when it is exercising its judicial functions, and is proceeding in excess of its judicial powers, or is usurping judicial powers which do not belong to it, to such action a writ of prohibition will lie." In the case of *Brazie* v. *Commissioners*, 25 W. Va. 213, it was held that the writ of prohibition lies from a superior court, not only to inferior judicial tribunals, but to inferior ministerial tribunals possessing, incidently, judicial powers, and known as "*quasi* judicial tribunals," and also, in extreme cases, to purely ministerial bodies when they usurp and attempt to exercise judicial functions. Our Constitution (article VIII, s. 24) clearly defines the powers of the county court by saying that such courts may exercise such powers and perform such other duties, not of a judicial nature, as may be prescribed by law. Can we say that when charges are preferred against an officer, a justice of the peace, which proceeding has for its avowed object his amotion from office, and which prays that process and notification be issued against him, and that said charges be heard, and that such action and other legal proceedings be had by said board of commissioners as by law they may deem necessary and proper, such proceeding is not in reality a suit, and that it does not necessarily require the determinatian of intricate legal questions, and, in short, call for a judicial investigation—that it is not a judicial proceeding? This question must be answered in the negative. While we are aware that the cases of *State* v. *Hawkins*, 44 Ohio St. 98 (5 N. E. 228) and *Donahue* v. *Will Co.*, 100 Ill. 94, and *Stern* v. *People*, 102 Ill. 541, hold that the amotion of a public officer is not a judicial power, but is ministerial or executive, and perhaps some other cases in Illinois hold the same, yet the

great weight of authority holds such action to be judicial. In the case of *Dullam* v. *Willson*, 53 Mich. 392 (19 N. W. 112) it was held that a statute which provided that the secretary of state, auditor general, and all state and county officers, except the state treasurer and judges, may, for official misconduct, or habitual or willful neglect of duty, at any time during the recess of the legislature, be removed, and the vacancy supplied during such recess by the governor, "was void, because at the time it was adopted the governor had no judicial power under the constitution, and that constitutional provisions must be construed with reference to each other when relating to the same subject-matter." Again, in the case of *People* v. *Nichols*, 79 N. Y. 582, which was a case in which the question was as to the power of the mayor of the city of New York to remove certain city officers for cause, it was held that "the proceeding must be instituted upon specific charges, sufficient in their nature to warrant the removal, which, unless admitted, must be proved. The defendant may cross-examine the witnesses to support the charges, call others in his defense, and in all steps of the proceedings is entitled to be represented by counsel. The proceeding, therefore, being judicial in its character, is subject to review by a writ of *certiorari* issued by the supreme court." The case of *Honey* v. *Graham*, 39 Tex. 1, was a case in which, the state treasurer having temporarily left the state, the governor declared the office vacant, and attempted to fill it by appointment, in which case the court held that "the right to hold and exercise the functions of an office to which one is elected by the people is regarded both as property and privilege, and the incumbent can only be deprived of his office in the manner pointed out in the sixteenth section of the first article of the constitution, and that, although the governor may assume the existence of a vacancy in such an office, no case can occur wherein he will be authorized to adjudge the office forfeited." In the course of his opinion, Walker, J., in that case says: "It may be safely admitted that more than one case might occur where the governor would be authorized in assuming that an office was vacant; but no case can occur, under our constitution, wherein

the governor would be authorized to adjudge an office forfeited. Judgment belongs to the judiciary. A charge of forfeiture can only be made out on proof—proof sufficient to satisfy twelve unprejudiced minds. To forfeit his right to an office, the incumbent must have done something sufficient in law to deprive him of his office, and the constitution and laws secure to the person so accused the right of traverse, the right of trial, and no power on earth can lawfully deprive him of these rights."

From what has been held in the authorities above quoted and others which might be referred to, my conclusion is that in order that an incumbent may be removed from office, charges must be preferred, the party must be summoned and have an opportunity of interposing a defense if he so desires, and there must be a judgment of amotion, and that when any court entertains such proceedings, and pronounces such judgment, it must be regarded as performing a judicial function, and in rendering such judgment such court or board of commissioners must be regarded as passing upon the rights and property of the individual, and oftentimes depriving him of his only means of support. Such proceedings we must regard as judicial, and, as such, they are forbidden to be exercised by the county court by the plain letter of our constitution.

I reach this conclusion, fully aware of the fact that in the case of *State* v. *Hawkins*, 44 Ohio St. 98 (5 N. E. 228) it was held that the power conferred on the governor of the state to remove any members of the board of police commissioners was administrative and not judicial, and in the case of *Stern* v. *People*, 102 Ill. 541, it was held that "the power to remove a county treasurer, conferred upon the county board, is not a judicial power, but a ministerial or executive power." Anderson, in his Dictionary of the Law, defines a judicial act as follows: "An act done in the exercise of judicial power; an act performed by a court, touching the rights of parties, or property brought before it by voluntary appearance or by prior action of ministerial officers." See *Flournoy* v. *City of Jeffersonville*, 17 Ind. 170.

Our statute (section 7, chapter 7) provides for the removal from office of county and district officers, and, after pro-

viding that such removal in the case of a justice of the peace shall be made by the county court of the county, it further provides that "the charges against any such officer shall be reduced to writing and entered of record by the court, and a summons shall thereupon be issued by the clerk of such court, containing a copy of the charges, and requiring the officer therein named to appear and answer the same on a day to be named therein, which summons may be served in the same manner as a summons commencing an action may be served, and the service must be made at least five days before the return day thereof," and the court may either suspend him or remove him. When a judge or a court of justice, in a suit between parties, ascertains facts, ascertains and applies thereto the law, decides the controversy, and renders judgment, he has exercised judicial power, and in such exercise has done a judicial act. Now, why is he summoned, and a copy of the charges served upon him, if the object is not to make him aware of what he is accused? And why is he required to appear and answer, if it is not to put in issue the charges? And why put in issue the charges if their truth or falsity is not to be determined as a basis of the action of the court? And if the charges are sustained, and he is removed by the judgment of the court, by what other name can we call this proceeding than a judicial proceeding? There is, unquestionably, a trial and a judgment, and we can but conclude that it is in contravention of section 24 of Article VIII of the Constitution, which provides that "county courts may exercise such other powers and perform such other duties not of a judicial nature, as may be prescribed by law."

The Circuit Court, therefore, as we conclude, committed no error in making the rule absolute, and the judgment complained of is affirmed, with costs, *etc.*

HOLT, PRESIDENT:

The question whether, on the offense here alleged and specified, there must be indictment and conviction before amotion, I do not consider. In a broader sense, the question here involved is one, in the main, of method of procedure.

I find that the different steps required to be taken are, from first to last, in the method of procedure, distinctively judicial. The court does not intervene or proceed of its own motion, as it might do in a matter of police or county economy, but certain citizens present a sworn complaint, in the nature of an information, charging the officer with gross official misconduct in certain particulars, fully set forth. This is a formal pleading on one side, which is spread at large on the record. A summons thereupon issues, to be served on the defendant or respondent, together with a copy of the charges, which is to be served in the judicial mode of serving summons in an action. The defendant responds, making by his pleading an issue of law or fact, or both. The court hears witnesses, and ascertains facts, and finds issues in the judicial mode. In the same way it ascertains and applies the law to the facts found, and educes the point of law thence arising, and puts it in the concrete form of a judgment rendered.

When a judge, as such, or a court, has the parties before him, the one making complaint and asking judgment, and the other denying and defending, in the judicial mode, and the judge, in the same method, ascertains the facts, determines and applies the law, and renders judgment, and causes it to be executed, he has administered justice, he has exercised judicial power, and, in such exercise, has performed a judicial act, in form or method of procedure, which is here, the important part, and by such method sees to it that the law in the concrete case is obeyed, executed, enforced.

The executive and judicial branches are therefore close akin. Their respective functions shade into each other imperceptibly. The administrative branch of the executive power can not wait to pursue judicial methods. Public convenience does not admit of such delay. It must therefore, in some essential parts, follow another method in ascertaining the facts and applying the law. We may, for distinction, founded on partial resemblance, term this act of his *quasi* judicial. A court of police and fiscal affairs may, and does to some extent, follow the same method. The case is concrete, and the point of law arises out of the facts found,

and assumes the form of a judgment rendered.   But this is not universal or distinctive.   How a question of constitutional law may in some states be passed upon, see Opinion of the Justices, 163 Mass. 589 (40 N. E. 713) showing that the judiciary may in many ways, and many of them free from doubt, aid in lawmaking, thus touching elbows with the lawmaking power on the other side.

I have said thus much to show that in the practial affair of making, declaring and enforcing the law, it will not do to insist upon any hard and fast line of determination between these three governmental powers, but mainly to show that it is the method of procedure which must in the main determine the question.