# CHARLESTON.

MILLARD ELLIS v. STATE ROAD COMMISSION.

(No. 5580)

KYLE MOUNTS v. STATE ROAD COMMISSION.

(No. 5581)

WILLIAM ELLIS v. STATE ROAD COMMISSION.

(No. 5582)

Submitted November 10, 1925.     Decided December 8, 1925.

1. AUTOMOBILES—*Conviction of One Violating Statute Not Ordinarily Necessary Before Revocation of Permit.*

When a statute punishes an act as a misdemeanor and in addition thereto provides a revocation of a certain permit, a conviction of one violating the statute is ordinarily not necessary before the permit may be revoked.   (p. 533.)

(Fines, 25 C. J. § 93 [Anno.].)

2. MANDAMUS—*Mandamus Cannot be Employed to Control Power of State Road Commission Expressly Made Discretionary by Statute.*

Mandamus cannot be employed to control a power of the State Road Commission, expressly made discretionary by the statute.   Point 1 of the Syllabus of *County Court* v. *Holt,* 61 W. Va. 154 applied.   (p. 539.)

(Mandamus, 38 C. J. §§ 258, 356.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Separate original proceedings by the State, on the relation of Kyle Mounts, Millard Ellis and William Ellis, for writs of mandamus to be directed to the State Road Commission.

*Writs denied.*

*E. L. Hogsett,* for relators.

*H. B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Elmer L. Stone,* for respondent.

HATCHER, JUDGE:

On Oct. 12, 1925, the State Road Commission revoked a taxi-cab permit (Class H 3) and a chauffeur's license, both of which had been issued to Kyle Mounts of Logan County. Mounts filed a petition in this court charging that the action of the Commission was arbitrary, capricious and illegal. Upon his prayer an alternative writ of mandamus was awarded against the Commission.

In answer to the writ the Commission denied that it acted arbitrarily, etc., because, as was proven at the hearing of the case, Mounts had violated the provisions of the law contained in Sec. 82, Ch. 17, Acts of 1925.

Shortly after the action of the Commission, Mounts was acquitted, in the circuit court of Logan County, of the charge of violating the provisions of Sec. 82, etc. Thereupon he requested the Commission to reinstate his permit and license, but his request was refused.

The evidence taken at the hearing before the Commission shows that the petitioner operated two taxi-cabs. He drove one taxi in person and employed Leslie Gee to operate the other. About Aug. 1925, passengers were received on each of petitioner's taxis at places within 100 feet of a regularly designated stop of the Logan Bus Company. The latter had a permit to operate vehicles over a fixed route from Logan to Omar, and had established regular stops on this route. At the time of the occurrence complained of, petitioner announced, "Here is a car going to Omar." No evidence was offered before the Commission in palliation of this act.

The provision of Sec. 82, etc., violated is:

> "Provided, however, that vehicles operating under Class H-3 may receive passengers along routes for which a certificate of convenience has been granted, but not at or within two hundred feet of any building owned or maintained as a designated stop."

The penalty for a breach of this mandate is contained in the following extract from Sec. 82, Ch. 17 as amended by the Acts of 1925.

"Any person violating any of the provisions of this section or the rules and regulations regularly adopted by the State Road Commission as authorized herein, shall be guilty of a misdemeanor and upon conviction thereof shall be punished with a fine of not less than Five Dollars nor more than Two Hundred Dollars, and in addition thereto such certificate of convenience may be suspended or revoked by the State Road Commission upon the complaint to it of any person interested or by the Commission on its own motion, after hearing duly had upon at least five days' notice to all parties interested."

There are two questions to be answered in this case. (1) Can the Commission revoke a certificate of convenience because of a violation of the statute until there has been a conviction therefor in a court authorized to try misdemeanors? (2) Is the revocation of the chauffeur's license because of such violation arbitrary or illegal?

(1) An analysis of the statute shows that for its violation a two-fold punishment is provided. One part of this punishment is *in personam,* by a fine imposed in a regular criminal proceeding, where the offense must be established beyond all reasonable doubt. ·The other part of the punishment is *in rem,* by revocation ·of a permit, upon a hearing before the Commission, where it is requisite that the offense be established by only a preponderance of the evidence. There is nothing novel about legislation providing a fine (or fine and imprisonment) and also a forfeiture or penalty. But our statute is unique in that the hearing, *in re* the revocation of a permit, is had before a Commission instead of before a .court. Yet there can be no doubt as to the intention of the Legislature in this respect. The statute prior to its amendment in 1925 was:

"Any person violating any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished with a fine of not less than $5.00, nor more than $200.00, and in addition thereto such permit may be re-

voked or the license taken away by the commission,
or other licensing authority having jurisdiction
thereof.''

Comparison of the amended statute with the statute before
amendment shows ·that the sole purpose of the amendment
was to provide for a hearing before the Commission.   A
"hearing" includes the introduction of evidence, the argu-
ment of counsel, and the pronouncement of the decree.  *Bab-
cock* v. *Wolf*, 70 Iowa 676.   Therefore the hearing before
the Commission contemplated by the Legislature is a com-
plete trial of the *in rem* proceeding.   Why should the Legis-
lature have provided such a hearing if it is a nullity unless
preceded by a conviction in a criminal case?   Those who op-
pose independent action by the Commission say that a com-
plete trial is not to be had at such hearing; that the Legisla-
ture intended for the Commission to await the conviction of
an offender in a criminal court, no matter how long the de-
lay, and then to try the convicted one a little bit, in fact just
enough for the Commission to determine whether the viola-
tion be of such character as to warrant revocation of the of-
fender's permit.   This view overlooks the fact that the char-
acter of the offence could be ascertained by the Commission
from the criminal proceeding and a hearing for that purpose
alone would therefore be bootless.   It also ignores the con-
gestion and dangers of our highways and the necessity, pat-
ent to the Legislature, of providing a summary treatment of
those who hinder or endanger travel thereon.   The personal
punishment of the offender can await the slow course of crim-
inal procedure, but the welfare and safety of the public de-
mand that the right to use our highways be speedily taken
from those who abuse this privilege.   There are no words in
the statute limiting or modifying the word "hearing".   Why
seek in conjecture to supply words of limitation, the effect of
which would be to hamper the efficiency of the Commission,
to inconvenience and possibly endanger the public, and to
delay justice?   The Commission is composed of men care-
fully selected for their judgment and integrity.   Its mem-
bers are sworn to the faithful performance of their duties.

Are they not as well qualified as the average jury to weigh the evidence of an alleged violation of the road law? If their discretion is sufficient to pass on the gravity of the offence, as suggested, then it is also sufficient to ascertain whether a violation has in fact occurred.

Another objection advanced to the right of the Commismission to take the initiative in this case, is that the permit is a valuable property right, no appeal from the decision of the Commission is provided in the amended statute, the Commission is composed of men not necessarily learned in legal procedure, and the Legislature could not have intended to confer on these men independent authority in such an important matter, else an appeal would have been provided. But the sponsors of this argument have overlooked the express provisions of Secs. 2 and 3, Ch. 110, Code. "In every case, matter or proceeding—before a county court, council of a city, town or village, justice or other tribunal, the record or proceeding may after a judgment or final order therein— be removed by a writ of certiorari to the circuit court of the county in which such judgment was rendered or order made." Sec. 2, Ch. 110, Code. "Upon the hearing, such circuit court shall, in addition to determining such questions as might have been determined upon a certiorari, as the law heretofore was, review such judgment, order or proceedings, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter, as law and justice may require." Sec. 3, Ch. 110, Code. The hearing before the Commission is certainly a *proceeding;* the determination of the Commission on the hearing is a *final order;* in the contemplation of the Legislature the Commission is an *inferior tribunal;* therefore the remedy for any error in legal procedure or mistake in judgment by the Commission on such hearing, is at hand in our statutory enlargment of *certiorari. R. R. Co.* v. *Town of Triadelphia,* 58 W. Va. 487.

The leading case in the United States as to whether the *in rem* proceeding is dependent on the one *in personam* is

that of *The Palmyra,* 12 Wheat. 1. The opinion written by Mr. Justice Story contains the following unequivocal statement:

> "Many cases exist, where the forfeiture for acts done attaches solely *in rem,* and there is no accompanying penalty *in personam.* Many cases exist where there is both a forfeiture *in rem* and a personal penalty. But in neither class of cases has it ever been decided that the prosecutions were dependent on each other. But the practice has been and so this court understands the law to be, that the proceeding *in rem* stands independent of and wholly unaffected by any criminal proceeding *in personam.* This doctrine is deduced from a fair interpretation of the legislative intention apparent upon its enactments."

In the century that has passed since the decision in the *Palmyra* case the authorities cite no dissent from the principles announced therein, and only one departure from their application. 25 C. J. 1186, par. 93, and cases cited. In the case of *Tissot* v. *Dubuclet et al* 33 Lou. Ann. 703 it was held that a conviction in a criminal proceeding was a condition precedent to the recovery of a penalty provided by a certain Louisiana statute. No authority is cited and no reason given in the opinion for the decision except "the plain terms of those statutory provisions." The Louisiana statute is different from the West Virginia statute. Consequently that case is of little weight in the present consideration.

It is contended for petitioner that the words "in addition thereto" in our statute necessarily imply increase, accession, or augmentation; that for a punishment to be increased it must already exist in part; and that hence a fine must have been imposed before the punishment can be augmented by a revocation of the permit. The construction placed by petitioner on the phrase in question is opposed by the weight of authority. In *People* v. *Snyder,* 86 N. Y. Sup. 415, the statute there under consideration prohibited the burning of fallows during certain periods of the year and provided that any one violating the statute should be guilty of a misdemeanor. "And

in addition thereto is liable for a penalty." But it was held
that the two actions provided by the statute were "not at all
dependent upon each other." The syllabus which exactly
follows the *Palmyra* case- is: "Where a statute punishes an
act as a misdemeanor and also imposes a penalty therefor
it is not necessary to obtain a conviction before sueing for
the penalty."

*Origet* v. *U. S.* 125 U. S. 240, was an *in rem* proceeding
brought to enforce the forfeiture of certain merchandise
seized for a violation of a statute which declared: "That
any  *  *  *  person, who shall with intent to defraud the
revenue, make or attempt to make any entry of imported
merchandise, by means  *  *  *  of any false statement
*  *  *  shall for each offense be fined in any sum not ex-
ceeding five thousand dollars nor less than fifty dollars, or be
imprisoned for any time not exceeding two years, or both;
and in addition to such fine, such merchandise shall be for-
feited." It was contended in that case that the forfeiture
of the goods was authorized as an incident of the prosecu-
tion of an offender by indictment, that the forfeiture could
be imposed, only as an addition to a fine already imposed,
and that the merchandise could not be forfeited independ-
ently of the imposition of the fine. But the Supreme Court
held that such a construction of the statute was not proper;
that no condition attached to the imposition of the forfeiture;
and that the merchandise could be forfeited "independently
of the fine mentioned in that statute."

A conclusive decision on the meaning of the words "in
addition, etc." is that of *Com.* v. *Avory* (Ky.) 29 Am. Rep.
429. That case involved the right of the Commonwealth to
recover from the defendant money which he had won on an
election bet. The Kentucky statute imposed a fine for making
a bet or wager upon an election, to be recovered by indictment,
and then continued: "and in addition to the fine aforesaid,
if the person winning shall receive the sum of money or other
thing so bet, or its value, or anything therefor, the sum of
money so received, or the value of the thing else so received
shall be forfeited to the Commonwealth and may be recov-
ered by an appropriate action in the name of the Common-

wealth'' etc. The Kentucky court held that the words ''in addition to the fine aforesaid'' did not carry with them any sequence or order of time but were synonymous with ''also'', ''moreover'', and ''likewise''; that if dependence or sequence of the forfeiture on the fine had been intended, the Legislature would have resorted to language ordinarily employed to convey such an idea, and instead of the words ''in addition to the fine aforesaid'', the statute would have depended the forfeiture on the fine with such words as ''after such conviction shall have been made'', etc.

The contention is made that our statute conforms to the suggestion in the Kentucky decision, in that it uses the words ''upon conviction thereof''. But those words in our statute are used solely with reference to the punishment by fine, and have no relation to the revocation of the permit. Those words are implied in the Kentucky statute, as a fine for betting on an election would not be imposed until conviction therefor. If our Legislature had intended to make the revocation dependent on the personal penalty, the statute would have read like this: ''shall be guilty of a misdemeanor, and upon conviction thereof shall be punished with a fine of not less than five dollars nor more than two hundred dollars, and *after such conviction* such certificate of convenience may be suspended or revoked,'' etc.

A Missouri statute awards a husband certain articles ''in addition to'' curtesy, and a New York statute directs appraisers to set apart for a widow certain things in case her interest in her husband's estate ''in addition to'' her dower was less in value than one thousand dollars. The words ''in addition to'' in each of these statutes have been construed equivalent to the word ''besides''. *Ferguson's estate* v. *Gentry,* 206 Mo. 203; *In re Mulligan's estate,* 24 N. Y. Supp. 321.

We therefore follow the current construction of the words ''in addition thereto'' and hold that as used in our statute, they are equivalent to ''also'', ''likewise'', ''besides'', etc.

Our answer to the first question in the present case may be expressed in the language of the able brief from the Attorney General's office. ''The right given to the Commission to revoke permits is not dependent upon court action.

Neither is the authority of the court to make prosecution for violations of the law dependent upon any action by the Commission. There is nothing inherent in the nature of the two proceedings that makes the one dependent upon the other, and such independent relation is in no wise affected by the fact that one precedes the other in the statute.''

2. The reason given by the Commission for cancelling petitioner's chauffeur's license is that he had violated the law. The Legislature has not only given to the Commission the general supervision of the construction, maintenance, and control of its highways, but has also given the Commission the specific right to revoke a chauffeur's license *''for any cause which the Commission may deem sufficient.''* Code, Sec. 84, Ch. 43. To properly serve and protect the public it has been found necessary to pass certain laws regulating the use of the highways by chauffeurs. In order to secure obedience to those laws the Commission may have found it necessary to discipline the offenders. If so, its action was purposed to benefit the public, and cannot be held as arbitrary. Mandamus may not be invoked to control a power of the Commission expressly made discretionary by the statute. *County Court* v. *Holt*, 61 W. Va. 154; *Buxton* v. *O'Brien*, 97 W. Va. 343.

The facts in the cases of William Ellis and Millard Ellis, respectively, against the Commission vary in detail from those in the Mounts case, but the facts in the three cases are sufficiently similar to subject them to the same principles of law.

The peremptory writ will therefore be refused in each case.

*Writs denied.*