W. R. ALEXANDER, *et al.*

*v.*

W. S. RITCHIE, *et al.*

(No. 10150)

Submitted May 3, 1949. Decided June 1, 1949.

*Wm. Bruce Hoff,* for plaintiffs in error.

*J. B. Heilmann, Harper & Baker,* for defendants in error.

LOVINS, JUDGE:

This proceeding, instituted August 30, 1948, pursuant to the provisions of Code, 6-6-7, in the Circuit Court of Jackson County, West Virginia, by W. R. Alexander, and nine other persons, hereinafter referred to as "petitioners", all of whom are voters of said Jackson County, has for its purpose the removal from office of T. E. Rymer, W. S. Ritchie, Nelson Critchfield, George Walker and F. D. Austin, members of and constituting The Board of Education of the County of Jackson, said members hereinafter being referred to individually as "defendants" and collectively as the "board". The Circuit Court of Jackson County, by order made January 24, 1949, dismissed the petition on the ground that petitioners had failed to sustain the charges contained therein against defendants. Petitioners prosecute this writ of error.

By the same order the court, without objection, held that this proceeding, as to defendants, T. E. Rymer and George Walker, had abated, their terms of office having expired December 31, 1948. Hence, we are not concerned with the rights of those two defendants.

In effect, the petitioners charge that the defendant, W. S. Ritchie, should be removed from office "for official misconduct", as provided in Code, 6-6-5, in that he violated the provisions of Code, 61-10-15, making it a misdemeanor and "* * * unlawful for * * * any member of any county or district board * * * to be or become directly or indirectly, pecuniarily interested in the proceeds of any contract or service, * * * which as such member, * * * he may have any voice, influence or control. * * *". As to the other defendants, the petitioners, in effect, charge official misconduct in that they each "wilfully, knowingly and unlawfully approved the aforesaid misdemeanors and statutory violations of the said defendant, W. S. Ritchie" by approving, and ordering payment for the goods and services furnished the board pursuant to the alleged unlawful contracts.

The alleged official misconduct arises from certain transactions between Boso & Ritchie, Inc., and the board. Boso and Ritchie, Inc., is a corporation, organized about 1938, to take over the firm name (to which was added the abbreviation "Inc.") and assets of a partnership which, for a number of years prior thereto, had been engaged in a general contracting business. The concern is now, and always has been, primarily engaged in heavy road construction work. It has prospered to the extent that for many years it has been considered one of this State's outstanding road construction general contractors, and is known, among residents of Jackson County, as one of that county's largest business concerns and employers.

Although a man named Ira Boso had been a partner in the firm, since Boso's death in 1935, and since the concern was incorporated, it has been owned entirely by the Ritchie

family. The defendant, W. S. Ritchie, who, in his own name or in the names of his children, owns 525 shares of a total of 1,150 shares of the outstanding stock of the corporation, is vice president of the company, drawing a salary of from $5,000.00 to $25,000.00 a year, depending only on his personal needs. The remaining outstanding shares of the corporation are owned by defendant's brother, R. E. Ritchie, and his sister, G. M. Ritchie, who is secretary-treasurer of the company. These three constitute the board of directors of Boso & Ritchie, Inc.

The undisputed evidence in the record, disclosed by the testimony of eleven witnesses, is to the effect that it is a matter of common knowledge that defendant, W. S. Ritchie, is one of the principal owners of the Boso & Ritchie, Inc. All but one of these witnesses testified that newspaper articles involving W. S. Ritchie generally linked his name with the corporation. Although they deny that they knew W. S. Ritchie was a stockholder in Boso & Ritchie, Inc., each of the other defendants herein admits that he knew that defendant, W. S. Ritchie, was employed by the company. The defendant, T. E. Rymer, also admits that he had known that W. S. Ritchie had been a member of the former partnership of Boso & Ritchie.

About four years prior to the institution of this proceeding, Boso & Ritchie, Inc., acquired a hardware store in Ravenswood which they have since owned and operated as "Boso & Ritchie, Inc., Farm Supply Department", to be designated hereinafter as "hardware store".

The specific contracts, on which the charges against defendants are predicated, fall generally into two classifications. The first classification involves a certain contract entered into between the board and Boso & Ritchie, Inc., on March 26, 1948, providing for the grading of the athletic field at Ripley High School, on which contract the board approved payments, June 16, 1948, amounting to $1,465.38, or slightly over 7.11% of the total of all expenditures made by the board during that fiscal year, excluding

the salaries of teachers and other personnel regularly employed by the board.

The evidence discloses that for some time prior to March, 1948, various residents of Ripley had requested that the board make certain improvements on the high school athletic field of that town. Several of these people had formed an organization called a "Boosters Club", which undertook to accomplish certain of the desired improvements. At the insistence of the "Boosters Club", R. P. Kiser, the county superintendent of schools, was prevailed upon to ask W. S. Ritchie if Boso & Ritchie, Inc., would undertake the grading of the field. Defendant, W. S. Ritchie, in behalf of the company, proposed to Kiser that Boso & Ritchie, Inc., would do so at cost to the company. Without revealing W. S. Ritchie, individually, as the source of the offer, Kiser presented the offer of Boso & Ritchie, Inc., to the board on March 26, 1948. The offer was unanimously accepted by the Board, all members being present, and on June 16, 1948, the invoice of Boso & Ritchie, Inc., for the costs of the project was unanimously approved for payment. It should here be noted, however, that, through an oversight, Boso & Ritchie, Inc., had failed to include in its statement at least $400.00 in costs to it. It is not disputed that normally the cost of the project would have been between $5,000.00 and $7,000.00, as compared with the sum of $1,465.38 paid and the $400.00 not paid.

The second classification involves sales by the hardware store to the board as follows: for the fiscal year ending June 30, 1945, supplies totalling $27.04; for the fiscal year ending June 30, 1946, suplies totalling $104.80; for the fiscal year ending June 30, 1947, supplies totalling $871.42; and for the fiscal year ending June 30, 1948, supplies totalling $277.32. The sales so made constitute, respectively, .135%, .471%, 4.308% and 1.34% of the total expenditures made by the board, excluding the salaries of teachers and other persons regularly employed by the board, during the respective fiscal years.

The supplies furnished by the hardware store to the board were all furnished intermittently on small separate orders. Although a few of the supplies were bought and used by a teacher, by the vehicle repair department of the board, and by one of the board's janitors, by far the greater portion consisted of supplies for the maintenance of buildings and for the erection of a temporary two-room addition to one of the board's schools. The supplies for the maintenance and erection of buildings were purchased principally by W. H. Mitchell, superintendent in charge of the repair and maintenance of buildings, who was instructed to purchase his supplies wherever available, and thereafter to submit to Kiser the invoices for such purchases, from which payment orders were prepared for submission to the board.

In some instances, the payment orders were approved by the president and secretary of the board, without submission to the board in session, the board having previously delegated to said president and secretary the power to approve "routine" purchases. In most instances, however, the payment orders were consolidated into a single list on which was shown only the names of the various creditors of the board, and the total of each creditor's claim. Upon the approval for payment of such list, the financial secretary marked each individual payment order included in the list, and the board's drafts upon the sheriff were issued therefor. Each of the defendants stated that he never saw any of the original invoices or payment orders, although each knew that from time to time he was voting to approve payments to be made to Boso & Ritchie, Inc.

W. S. Ritchie testified that all supplies sold by the hardware store to the board were at or below the prevailing cost for the items purchased. He further testified that he had twice informed Mitchell not to purchase anything from Boso & Ritchie, Inc., unless it was required by an emergency or was not reasonably available elsewhere. The record seems clear that Mitchell followed these in-

structions with reasonable faithfulness. Similar instructions were given by Ritchie to the supervisor of school bus transportation, with the same result. However, no instructions were given to the teacher or the janitor, and their purchases were made from the hardware store only as a matter of convenience. All purchases were made without prior authorization by the board, although approval of payment therefor was given by the board in the manner hereinbefore stated.

Two questions are presented on this writ of error: (1) Has W. S. Ritchie violated the provisions of Code, 61-10-15, and consequently is now subject to removal from office under the provisions of Code, 6-6-7; and (2) are defendants, Critchfield and Austin, guilty of official misconduct in authorizing payment to Boso & Ritchie, Inc., and therefore subject to removal from office? Those questions have recently been considered by this Court in Hunt v. Allen, decided on June 22, 1948, 131 W. Va. 627, 53 S. E. 2d 509. In that case this Court applied a rigid rule with reference to contracts between a member of the board of education and the board. We have reexamined the opinion in the *Hunt* case and find no reason for departure therefrom.

Code, 61-10-15, implements the public policy of this State, and its provisions are clear and unambiguous. Although harsh, its objects and purposes are salutary. The purpose of the statute is to protect public funds, and give official recognition to the fact that a person can not properly represent the public in transacting business with himself. To permit such conduct would open the door to fraud. The statute is designed to remove from public officers any and all temptation for personal advantage.

A transaction with a corporation in which a public officer is the owner of a substantial portion of the stock of such corporation comes within the inhibition of the statute here considered. *Arbogast v. Shields*, 123 W. Va. 167, 14 S. E. 2d 4.

There is no denial that W. S. Ritchie, R. E. Ritchie, and Goldie M. Ritchie are the owners of all the capital stock of Boso & Ritchie, Inc., and that W. S. Ritchie and his children have continuously owned approximately fifty per cent of the capital stock of said corporation from the time of its formation in 1938 until this suit was instituted.

Likewise there is no conflict concerning W. S. Ritchie's knowledge that The Board of Education of the County of Jackson purchased supplies from the store owned by that corporation, he having had in his possession one of the drafts issued by the board for payment to Boso & Ritchie, Inc., for supplies purchased by the board. Moreover, the board of education contracted with said corporation to grade the athletic field at Ripley. As a further indication that W. S. Ritchie knew of the probability of dealings between the board of which he was a member and his corporation, he instructed two of the board's employees to refrain from dealing with the corporation, if they could purchase supplies and materials from any other source.

We are impressed with the evidence of good faith on Ritchie's part. But his action alone is not sufficient to excuse him for the violation of the statute prohibiting contracts with the board, in which he was indirectly and pecuniarily interested. Undoubtedly the sale of supplies to the board by the corporation and payment therefor constituted a contract. *Hunt v. Allen, supra.* It is immaterial that he had made no profit on the grading of the athletic field at Ripley. The fact that his conduct involved no corrupt or immoral act does not, in our opinon, prevent the application of the statute. "* * * [The] simple answer is that his conduct was unlawful because forbidden by statute or was *malum prohibitum* as distinguished from *malum in se.*" *Hunt v. Allen, supra.* Nor is there any lack of wilfulness on the part of Ritchie, in a legal sense, since wilfulness arises or is implied from the acts herein charged against him. *Arbogast v. Shields, supra.* We are, therefore, of the opinion that the charges are sustained as against W. S. Ritchie, that he has violated the provisions

of Code, 61-10-15, and that he should be removed from his office as a member of the board.

Austin and Critchfield deny knowledge of the fact that Ritchie was a stockholder and was indirectly and pecuniarily interested in the money paid Boso & Ritchie, Inc., for supplies and work done by that corporation on behalf of the board, of which they were members.

It is fully established that Boso & Ritchie, Inc., was one of the largest business concerns in Jackson County; that it was engaged in constructing public roads; and that it is a matter of general reputation and notoriety that W. S. Ritchie is a stockholder in said corporation.

Ritchie admitted that he was the owner of stock in Boso & Ritchie, Inc. The ownership of stock in Boso & Ritchie, Inc., being admitted, evidence of the notoriety and reputation as to such ownership is admissible as tending to show that Austin and Critchfield had knowledge of Ritchie's stock ownership. *Tennessee Coal, Iron & Railroad Co. v. Linn,* (Ala.), 26 So. 245, 252; *Woods v. Montevallo, Etc. Co.* (Ala.) 3 So. 475; *Monahan v. Worcester* (Mass.), 23 N. E. 228. See *Shutte v. Thompson,* 15 Wall. 151, 21 L. ed. 123; 1 Greenleaf on Evidence, 16th Ed., Section 138; 20 Am. Jur., Evidence, Section 462.

We do not regard the decision in this case as deviating from that in the case of *Myers et al. v. Nichols,* 98 W. Va. 37, 126 S. E. 351. In that case only the sufficiency of the charges was tested on demurrer and the ruling certified to this Court. *Kesling v. Moore,* 102 W. Va. 251, 135 S. E. 246; and *Fisher v. Jackson,* 107 W. Va. 138, 147 S. E. 541, are in accord with this decision.

It is an inescapable proposition that Critchfield and Austin knew that they were paying Boso & Ritchie, Inc., for goods and services furnished The Board of Education of the County of Jackson. The surname of Ritchie is a part of the corporate name of Boso & Ritchie, Inc., and that

fact alone was a warning to them. Furthermore, Critchfield lived in the Town of Ravenswood where Boso & Ritchie, Inc., had their headquarters. These facts, coupled with the evidence of general reputation as to W. S. Ritchie's connection with Boso & Ritchie, Inc., can not be ignored. Although we do not say that the testimony of Critchfield and Austin is incredible, we do think it is unusual and evidences a lack of attention to grave official matters with which they were vitally concerned. Accordingly, Critchfield and Austin must be removed from office for official misconduct in that they voted to pay Boso & Ritchie, Inc., thus approving the misdemeanor committed by W. S. Ritchie, their fellow member of the board.

We do not mean to impute to any of the defendants in this case any immoral act, wrongdoing or moral turpitude. They have simply disregarded an imperative statute which calls for their removal. *Hunt v. Allen, supra.*

If statutes protecting public funds are to have any effect and force they should not be emasculated by judicial interpretation and relaxation of their provisions. Common prudence dictates that men holding official positions must not deal with themselves in a private capacity, directly or indirectly.

The defendants say that the purchases of supplies and materials from the hardware store of Boso & Ritchie, Inc., were made because of an existing emergency, and that the materials could not be obtained any other place. It may be that an emergency, in a limited sense, existed. But it appears that the word "emergency", as used by the witnesses, connoted more the meaning of the word "temporary". For instance, the erection of the two-room addition to the school building, hereinbefore referred to, was characterized by the witnesses as an "emergency", whereas, on cross-examination, it is admitted that what they intended was that the addition would be temporary to meet an existing housing requirement. They further defend on the ground that the grading of the athletic field was a

gratuity and that no profit was made. This is not a defense to the charges as hereinabove indicated. See *Arbogast v. Shields, supra.*

Accordingly, the order of the Circuit Court of Jackson County is reversed and this proceeding is remanded to that court with directions to remove W. S. Ritchie, Nelson Critchfield and F. D. Austin from office as members of The Board of Education of the County of Jackson.

*Reversed and remanded with directions.*