ORA E. JORDAN, *et al.*

*v.*

W. L. McCOURT, *et al.*

(No. 10269)

Submitted September 26, 1950. Decided December 5, 1950.

*A. G. Mathews, E. V. Morton, Jr., Stanley D'Orazio,* for plaintiffs in error.

*Wysong & Wysong,* for defendants in error.

LOVINS, PRESIDENT:

Ora E. Jordan, Myrtle Jordan, Emmit Cool, Golda A. Cool, Dan R. Spinks, Leo McClure, Rhoda M. Wayne, Arnold Dyer, V. L. Poole, Mildred Beale, and Maxel Gibson, hereinafter designated as "petitioners", voters of Webster County, West Virginia, filed their petition in the Circuit Court of Webster County, accusing W. L. McCourt and Raleigh Gregory, a member and president, respectively, of the board of education of such county, of malfeasance and official misconduct in office, and prayed for their removal.

The Circuit Court of Webster County upon consideration of the petition, answer and evidence, refused to remove McCourt and Gregory, and dismissed the petition. Petitioners bring the proceeding to this Court under the provisions of Code, 6-6-7.

McCourt and Gregory by their joint and separate answer admit that McCourt is a member of the Board of Education of the County of Webster; that he took office as such member on January 6, 1947; that Gregory is a member and president of the Board of Education of the County of Webster; and that he took office as such member on July 2, 1945. It is further admitted in the answer that McCourt is a stockholder of the McCourt Motor Company, owning seventy shares out of a total of two hundred fifty shares outstanding; that he is president of the motor company; and that he is paid a salary as such president.

Gregory admits in his answer that the Gregory Auto Supply Company is owned by him and that he supervises and works in and about the business of that concern.

The malfeasance and misconduct charged against McCourt consists of a number of transactions between Mc-

Court Motor Company and the Board of Education of the County of Webster, by means of which various parts, materials and supplies for the repair of motor vehicles owned by the board were sold by McCourt Motor Company to such board from December 12, 1946, to June 30, 1947, aggregating the sum of $372.94. Two of such sales took place in the calendar year 1946, and before McCourt took office, but the purchase price of the goods was paid on January 7, 1947. Other transactions between McCourt Motor Company and the board took place after June 30, amounting to $17.32.

A second class of transactions, engaged in by McCourt Motor Company, consists of a number of sales of parts and appliances made by McCourt Motor Company to Cecil Adkinson under variant names, who was employed by the Board of Education of the County of Webster, as its chief mechanic. Transactions between Adkinson and the board took place from November 6, 1947, to November 8, 1948, and aggregate the sum of $620.08.

In all its dealings with the board and with Adkinson the McCourt Motor Company rendered consolidated invoices, whereon the name of McCourt Motor Company was printed.

Adkinson testified that at or about the time he began to make purchases from the McCourt Motor Company, he was instructed by the Webster County Superintendent of Schools not to make purchases from said company in the name of the board of education.

Gregory is charged with malfeasance and misconduct in that the Board of Education of the County of Webster purchased from Carl B. Woodford, Inc., a chassis for a truck and a motor bus. On September 26, 1947, Carl B. Woodford, Inc., sold a chassis for a motor bus to the board, for which he was paid the amount of $1,379.99, and the motor truck on December 3, 1948, for the sum of $1,541.13.

Petitioners introduced an agreement between Carl B. Woodford, Inc., and Gregory, in which Carl B. Woodford,

Inc., is denominated a "direct dealer" and Gregory Auto Supply Company is designated as "dealer". The contract recited that the contracting parties would cooperate in advancing the sales of Dodge and Plymouth motor vehicles. It was provided that Gregory should establish a suitable place of business for the sale of Dodge and Plymouth motor vehicles and parts, and that he should have the exclusive right to purchase from Carl B. Woodford, Inc., Dodge and Plymouth motor vehicles for resale in Webster County. The agreement expressly provided that Gregory should not be considered the agent of Carl B. Woodford, Inc., but that Gregory should receive certain compensation for sales of Dodge and Plymouth motor vehicles made in Webster County, West Virginia. Various other provisions not pertinent to this proceeding are included in such agreement.

It is shown, however, that Carl B. Woodford, Inc., in response to advertisements, as well as personal solicitation on the part of Gregory, bid on furnishing the truck chassis and motor bus to the board. An attempt was made to prove that Gregory called the officers of Carl B. Woodford, Inc., at Weston, but the proof in that respect is insufficient. With the exception of the admission on the part of Gregory that he stated to the officers of Carl B. Woodford, Inc., that he, Gregory, was disqualified from bidding on furnishing the motor bus and truck chassis, coupled with the request that Carl B. Woodford, Inc., submit such bid, there is nothing in this record tending to show that Gregory had any interest in the two transactions between the board of education and Carl B. Woodford, Inc. The president of Carl B. Woodford, Inc., and Gregory testified that the latter received no pecuniary consideration, directly or indirectly, from the sales to the board, and there is no proof to contradict such testimony.

It is established that Gregory Auto Supply Company on the 9th and 14th days of July, 1947, and the 5th day of August, 1947, sold to Sherman Brady, an employee of the board, some bolts and brake rivets, which three sales

amounted to $1.30. The bolts and brake rivets were purchased for installation on motor vehicles belonging to and operated by the Board of Education of the County of Webster.

Invoices for all of the materials, parts and supplies sold by McCourt Motor Company directly to the board and to Adkinson were listed on consolidated invoices, rendered to the board, where the sales were made directly to it, and to Adkinson, where made directly to him. Such invoices were endorsed for payment by Gregory, as president of the board. Orders were drawn, in accordance with the direction of the board, signed by Gregory, made payable to McCourt Motor Company, where the sales had been made directly to the board, and made payable to Adkinson in instances where sales were made directly by McCourt Motor Company to him. The orders for payment for purchases made by Adkinson were endorsed by Adkinson to McCourt Motor Company, and presumably cashed by that company.

It is established that McCourt Motor Company is a well known business in the Town of Addison (Webster Springs); and that it was generally reputed in that community that McCourt was interested in the business of that company. There is a similar showing with reference to the business of Gregory Auto Supply Company.

We think the record herein discloses by a preponderance of the evidence that respondent McCourt, salaried president and one of the principal stockholders of McCourt Motor Company, was pecuniarily and directly interested in sales made by McCourt Motor Company to the Board of Education of the County of Webster and in sales made directly to Adkinson. It is further disclosed that respondent Gregory endorsed for payment with pen or stamp the consolidated invoices rendered by McCourt Motor Company to Adkinson; that Gregory signed the orders drawn in payment of such invoices; and that Gregory sold Sherman Brady, an employee of the board, for use by the board of education, bolts and brake rivets at a

price of $1.30, but that Gregory had no pecuniary interest, directly or indirectly, in the sales made to the board by Carl B. Woodford, Inc.

Upon consideration of the six assignments of error made by petitioners, we consolidate and restate them as follows, that: (a) The trial court erred in finding McCourt not guilty of the charges and in refusing to remove him; and (b) the trial court erred in finding Gregory not guilty of the charges and refusing to remove him.

McCourt and Gregory in countering the assignments of error made by petitioners contend that: (1) The parts, materials and supplies sold by McCourt Motor Company were necessary for the operation of school busses, and could not be purchased at any other place in Webster County and, if not purchased, the motor busses could not be operated; (2) there was no fraud or collusion involved in the transactions; (3) there could be no removal of McCourt and Gregory until they had been convicted of a misdemeanor; and (4) they could not be removed unless it was shown that they wilfully and negligently engaged in the prohibited transactions.

This proceeding is based upon Code, 6-6-7, reading, in part, as follows: "Any person holding any county * * * office, including the office of a member of a board of education, * * * may be removed by the circuit court of the county wherein such officer or person resides, or the judge of such court in vacation, on any of the grounds, or for any of the causes, for which a state officer may be removed under section five of this article, *or for any of the causes or on any of the grounds provided by any other statute.*" (Emphasis supplied). Code, 6-6-7, further provides that five or more voters may file a petition for such removal, and makes detailed provisions for the procedural steps to be taken, none of which is involved in this proceeding.

Code, 61-10-15, as amended by Chapter 35, Acts of the Legislature, Regular Session, 1949, provides that it shall

be unlawful for a member of the board of education "to be or become directly or indirectly, pecuniarily interested in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of, which as such member * * * he may have any voice, influence, or control. Any person or officer named who shall violate any of the foregoing provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned for a period not to exceed one year. In addition to the foregoing penalties, any such officer shall be removed from his office * * *."

Before discussing the controlling issues, we advert to the fact that purchases were made by the board of education from the McCourt Motor Company in the month of December, 1946. These purchases aggregated $6.12, and those transactions prior to the time McCourt took office do not amount to a violation of the statutes above quoted. *Fisher* v. *Jackson*, 107 W. Va. 138, 139, 147 S. E. 541.

The other transactions between McCourt Motor Company and the Board of Education of the County of Webster present one of the questions to be determined in this proceeding. McCourt, being one of the principal stockholders of McCourt Motor Company and president of that company, had an indirect pecuniary interest in the contracts between McCourt Motor Company and the board of education. *Arbogast* v. *Shields*, 123 W. Va. 167, 14 S. E. 2d 4. A member of a board of education, who is one of the principal stockholders and president of a corporation, selling merchandise to a board of which he is a member, violates Code, 61-10-15, as amended by Chapter 35, Acts of the Legislature, 1949. *Alexander* v. *Ritchie*, 132 W. Va. 865, 53 S. E. 2d 735, 739.

The sales made by McCourt Motor Company to the board of education and to Adkinson were contracts within the contemplation of Code, 61-10-15, as amended. *Hunt* v. *Allen*, 131 W. Va. 627, 53 S. E. 2d 509. Certainly, McCourt,

being a member of the board, should have known that Adkinson was an employee of the board, and that he was purchasing substantial amounts of parts, materials and supplies for the use of the board, and the fact that Adkinson purchased them in his own name did not serve to exculpate McCourt from a violation of Code, 61-10-15, as amended. We can see no reason for sales to Adkinson, unless it was an attempt to evade the provisions of the statute.

The fact that the board of education was compelled to buy supplies and services for Ford motor vehicles, and that such supplies, parts, and materials could not be purchased elsewhere in Webster County is not a defense. The statute makes no exception. Dealers in Ford parts, materials and supplies in neighboring counties could well have furnished these supplies to the board in such quantities that a supply could have been kept on hand. Code, 61-10-15, as amended, admits of no exception, and, being for a proper and salutary public purpose, should be rigidly enforced.

There is no fraud or collusion shown in any of the transactions between the board of education and McCourt and Gregory. The public policy of this State, as evidenced by Code, 61-10-15, as amended, is not directed against actual fraud or collusion, but is for the purpose of preventing those acts and eliminating any opportunity therefor. As this Court said in Alexander v. Ritchie, supra: "The purpose of the statute is to protect public funds, and give official recognition to the fact that a person cannot properly represent the public in transacting business with himself. To permit such conduct would open the door to fraud. The statute is designed to remove from public officers any and all temptation for personal advantage."

We are therefore of opinion that McCourt violated Code, 61-10-15, as amended, in that he was indirectly and pecuniarily interested in the proceeds of contracts between the McCourt Motor Company and the board, and, as a member of such board awarding such contracts, he

had a "voice, influence or control"; and should be removed as a member of the Board of Education of the County of Webster. For additional discussion with reference to the application of the statutes here involved, see *Kesling* v. *Moore,* 102 W. Va. 251, 135 S. E. 246, and *Fisher* v. *Jackson, supra.*

But in considering the charge of pecuniary interest against Gregory, we think petitioners have failed to establish that he, directly or indirectly, was pecuniarily interested in the sales of the motor bus and chassis to the board by Carl B. Woodford, Inc. While the fact that he was a dealer under an agreement with Carl B. Woodford, Inc., may afford grounds for surmise and conjecture that he was indirectly and pecuniarily interested in those sales, such interest is not proved.

The sales of bolts and brake rivets, aggregating $1.30, is a very small item. The sales made by Gregory to Brady, an employee of the board, may constitute a technical violation of Code, 61-10-15, as amended, but we think that his pecuniary interest, direct or indirect, in those transactions is so small that it does not call for his removal on that ground.

But a different question is presented when it is shown that Gregory endorsed for payment consolidated invoices rendered by McCourt Motor Company to the board and to Adkinson. Those invoices indicate that Gregory should have known that he was authorizing payment directly to the McCourt Motor Company for supplies and parts sold by that company to the board, and, in making payment to Adkinson, he knew, or should have known, that Adkinson was an employee of the board, and that he was purchasing supplies for the use of the board from McCourt Motor Company.

The fact that McCourt was interested in the McCourt Motor Company could not be proved by general reputation. But the general repute that McCourt was so interested, so as to show Gregory's knowledge of that interest,

is competent. *Alexander v. Ritchie, supra.* See *Tennessee Coal, Iron & Railroad Co.* v. *Linn* (Ala.), 26 So. 245, 252; *Woods* v. *Montevallo Coal & Transportation Co.* (Ala.), 3 So. 475; *Monahan* v. *Worcester* (Mass.), ·23 N. E. 228; *Shutte* v. *Thompson,* 15 Wall. 151, 2 L. ed. 123; 1 Greenleaf on Evidence, 16 Ed., 138; 20 Am. Jur., Evidence, Section 462. McCourt was generally reputed to be interested in the business of McCourt Motor Company, and, in addition, the surname "McCourt" is a part of the corporate name of McCourt Motor Company.. *Alexander* v. *Ritchie, supra.* These elements are sufficient to charge Gregory with knowledge that McCourt was interested in the business of the McCourt Motor Company.

We have hereinabove disposed of the first and second contentions of McCourt and Gregory relative to the inability of the board to purchase parts for Ford motor vehicles in Webster County other than from McCourt Motor Company, and the absence of fraud and collusion in the transactions.

Counsel for McCourt and Gregory insist in their brief that they should not be removed from their respective offices until they have been convicted of the misdemeanor denounced in Code, 61-10-15, as amended. In *Ellis* v. *Road Commission,* 100 W. Va. 531, 131 S. E. 7, the first point of the syllabus stated: "When a statute punishes an act as a misdemeanor, and in addition thereto provides a revocation of a certain permit, a conviction of one violating the statute is ordinarily not necessary before the permit may be revoked." See *Steele* v. *Road Commission,* 116 W. Va. 227, 179 S. E. 810, and, as disposing of a similar question, see *Dry Goods Stores* v. *Williamson,* 91 W. Va. 156, 159, 160, 112 S. E. 301.

It is significant that Code, 61-10-15, as amended, contains words similar to the statute considered in the *Ellis* case. The words "in addition" do not carry with them "any sequence or order of time", but are synonymous with "also", "moreover", and "likewise". *Ellis* v. *Road Commission, supra.* In other words, a proceeding for removal

from office, under Code, 6-6-7, and 61-10-15, as amended, does not depend upon a prior conviction of a misdemeanor.

The holding in the *Ellis* case is supported by logic, reason and well considered cases. *The Palmyra,* 12 Wheat. 1; *Origet* v. *United States,* 125 U. S. 240, 8 S. Ct. 846; *Commonwealth* v. *Avery,* 14 Bush. (Ky.) 625; *People* v. *Snyder,* 90 App. Div. 422, 86 N. Y. S. 415.

The Court's opinion in *Coffey* v. *United States,* 116 U. S. 427, 29 L. ed. 681, seems to depart somewhat from the doctrine announced in *The Palmyra, supra,* and other cases above cited. In the case of *Stone* v. *United States,* 167 U. S. 177, 17 S. Ct. 778, decided subsequently to the *Coffey* case, the doctrine here considered was approved.

Gregory and McCourt question the applicability of Code, 6-6-7, and 61-10-15, as amended, upon constitutional grounds, and cite the case of *Hamrick* v. *McCutcheon,* 101 W. Va. 485, 133 S. E. 127, as being contrary to the decisions of this Court in *Hunt* v. *Allen, supra,* and *Alexander* v. *Ritchie, supra.* An examination of this Court's opinion in the *Hamrick* case discloses that that case involved a charge of violating Section 12, Chapter 28A of the Code of 1923, which, in substance, provided that it should be unlawful for a county court, board of education or council of a municipal corporation to expend any money, or to incur any obligation or indebtedness not expressly authorized by law to be expended or incurred, and further provided that as to any member of a fiscal body who *negligently or wilfully violated* any of the provisions of that section, an order should be entered declaring the office of such member forfeited. The statute considered in the *Hamrick* case now forms a part of Code, 11-8-13, as amended by Chapter 38, Section 26, Acts of the Legislature, Regular Session, 1933, and Chapter 67, Section 31, Acts of the Legislature, Second Extraordinary Session, 1933. (Michie's Code, 1949, 11-8-3). The statute here considered is dissimilar.

The constitutionality of a statute, out of which Code,

6-6-7, originated, and similar in its provisions, was upheld in the case of *McDonald* v. *Guthrie*, 43 W. Va. 595, 27 S. E. 844, and in the case of *Dawson* v. *Phillips*, 78 W. Va. 14, 88 S. E. 456. It is true that in *Arkle* v. *Board of Commissioners*, 41 W. Va. 471, 23 S. E. 804, the statute which then authorized the removal of a justice of the peace by a county court was held unconstitutional on the grounds that Section 24 of Article VIII of the Constitution of this State, inhibited granting judicial power to a county court to hear and determine such charges. No such question is here presented.

We do not mean to say that the public suffered in any manner from the transactions between the board of education and McCourt Motor Company and Gregory Auto Supply Company, but we do say that this record clearly discloses a disregard of an imperative statute, and that no deviation therefrom is or should be permitted.

We therefore reverse the judgment of the Circuit Court of Webster County, and remand this proceeding to that court with directions to remove W. L. McCourt from office, as a member of the Board of Education of the County of Webster, and to remove Raleigh Gregory, as a member and president of such board.

*Reversed and remanded
with directions.*