# CHARLESTON.

COUNTY COURT OF TAYLOR COUNTY v. CITY OF GRAFTON.

Submitted October 5, 1915.  Decided November 2, 1915.

1. MUNICIPAL CORPORATIONS—*Co-Operative Maintenance of Highway—Power to Discontinue.*

    A municipal corporation, under its statutory power to lay off, open, vacate and improve streets, may impliedly and incidentally withdraw from co-operative maintenance with a county court, of a highway leading into the city from the country, by vacation or discontinuance of a street constituting part of such highway.  (p. 85).

2. SAME—*Use of Streets—Railroads.*

    It has statutory power also as against the county court, to allow such street to be so occupied and used by a railroad, as to preclude travel over it, in consideration of the building by the railroad company, of an equally good or better means of access to the city, connecting it with a county road at another point, not unreasonably distant, although a limited number of people may suffer inconvenience by the alteration.  (p. 85).

3. EMINENT DOMAIN—*Municipal Corporations—Taking of Private Property—Compensation—County Court—Discontinued Street.*

    A county court, as owner of a bridge rendered useless by discontinuance of a city street, is not an abutting owner of private property, entitled to the protection of the constitutional inhibition of the taking of private property for public use without compensation; nor is it an abutting owner entitled to an easement in the land constituting the locus of a discontinued street.  (p. 86).

4. MUNICIPAL CORPORATIONS—*Streets—Surrender to Railroad Company.*

    Surrender of a street to a railroad company, upon conditions prescribed by the statute, is not a devotion thereof to private use.  (p. 86).

5. SAME—*Ordinances—Enactment.*

    The council of a city, in the absence of statutory restrictions upon its powers, may consider and pass an ordinance at a single session.  (p. 88).

6. SAME—*Streets—Ordinance Granting Privileges—Members of Council.*

    Members of a city council are not disqualified to vote or act upon an ordinance granting privileges in a city street to a railroad company, by their status as employees of the company.  (p. 88).

    (WILLIAMS and MASON, JUDGES, absent.)

Appeal from Circuit Court, Taylor County.

Bill by the County Court of Taylor County against the City of Grafton and others. From a decree for plaintiff, the defendant, Baltimore & Ohio Railroad Company, appeals.

*Reversed, injunction dissolved and bill dismissed.*

*Warder & Robinson*, for appellant.

*G. W. Ford* and *Wm. T. George*, for appellee.

POFFENBARGER, PRESIDENT:

On the bill of the plaintiff, a preliminary injunction was awarded, on the 7th day of March, 1911, restraining the City of Grafton, from the enforcement of an ordinance passed by the council thereof, on the 19th day of July, 1910, vacating a portion of the street, known as Mill Street, at a point at which it was crossed by the tracks of the Baltimore and Ohio Railroad Company, and the railroad company from exercising privileges granted it by the ordinance in that portion of the street. After full defense by demurrer and answers, a decree perpetuating the injunction was entered in the cause, Dec. 31, 1914.

The street in question is a short section connecting one known as Main Street with a bridge over Three Forks creek, which constitutes part of a public road leading into the city. This road had been in existence for many years, and the bridge, situated wholly or partly outside of the corporate limits, was built by the county court. Mill Street, running from the end of the bridge to Main Street, had been crossed, with permission of the council, by a number of railroad tracks. Desiring to increase its track facilities and dispense with the grade-crossing at that point, the railroad company proposed to build a new bridge across Three Forks creek, between Bridge Street and Barrett Street and make an over head-crossing, so as to enable the people to get into and out of the city more safely and advantageously by that route, in consideration of the enlargement of its privileges in Mill Street. Accepting the proposition, the council granted the additional privileges, and, under the authority thus given, more tracks were put in and the street so changed as to render it unfit for use by vehicles or pedestrians, and destroy access

to the city by means of the bridge at Mill Street. The closing of that street wrought considerable inconvenience to residents of the territory on the opposite side of the creek from it. To reach that part of the city, they had to go a quarter or half of a mile, by a dirt road, to Bridge Street and cross and then come back on the opposite side of the creek. As regards people living at a distance, they now have one crossing instead of two, but it is very much better and safer than was either of the old ones. They have one modern and well constructed bridge instead of two inferior ones, and one overhead-crossing instead of two grade-crossings. Before the injunction proceeding was instituted, the railroad company had expended a large amount of money on the faith of the ordinance, $50,000.00, some of the witnesses say.

Neither the old bridge at the Mill Street crossing nor its approach was injured or destroyed. They were simply rendered useless by the incidental vacation of Mill Street. In practical effect or result, the action of the council of the city amounted to a withdrawal from co-operative maintenance with the county court, of a thoroughfare leading from the country into the city. It bases its claim of right to do this upon its statutory authority to lay off, open, vacate and alter streets and alleys. This authority is positive, specific and literally unlimited. Acts of 1899, ch. 44, sec. 28; Code, ch. 47, sec. 28, ser. sec. 2409.

Without denying the authority of the city, under ordinary circumstances, to vacate streets, the county court, as owner of the old bridge and the approach thereto, claims the status of an abutting property owner and the right, as such, to enjoin the city from an act which, renders its property, the bridge, useless and amounts in law to a taking or appropriation thereof. On this alleged basis, it also invokes that principle of law which gives to the owner of abutting property, a right of ingress and egress by means of the ground included in a public street, after vacation thereof, a private easement. But the bridge and its approach are not private property. They are held by the county court only for public uses and purposes. If the city had the right and power to vacate the street, and, as a result of the exercise of such power, the county court's bridge has become useless as a highway, it, as

owner of the bridge, is neither within the letter nor the spirit of the constitutional inhibition of the taking of private property for public use, without compensation. The property suffering consequential injury is not private property, and there is no statute imposing duty upon the city to make compensation therefor. The absolute right given by the statute to vacate the street is as full and ample as that of a county court to build a bridge. Each of the two tribunals is supreme within its own province and jurisdiction, and the loss occasioned one of them by withdrawal from, or cessation of, co-operation in the maintenance of a highway, is *damnum abseque injuria,* since the law gives no remedy. Nor has the county court any easement in the vacated street, as proprietor of abutting property. Its bridge is a mere highway, a thoroughfare for public travel. It was neither designed for, nor is it adapted to, any other kind of use. The county court has no power or authority to use it for the purposes to which private property is generally devoted. Cessation of travel over it, by reason of the vacation of Mill Street, has rendered it a mere useless public structure, the materials of which the county court, as owner, may remove or dispose of.

The doctrine of *Pence* v. *Bryant,* 54 W. Va. 263, denying power and authority to a city or town to vacate a street, in order that the ground may go to private use, is altogether inapplicable. Mill Street was already occupied by the tracks of the railroad company. In consideration of its construction of a good, safe overhead-crossing and a modern and well built bridge, at a point not far distant from the grade-crossing on Mill Street, the city impliedly vacated that street, by its grant of extensive privileges therein, to the railroad company. Such use is not a private one. Railroads are public service corporations, and the statutes authorize county courts and municipal corporations to permit them to occupy roads and streets, upon their compliance with certain conditions. In this instance, the arrangement to which the city has assented makes better provision for the general public, as regards convenience and safety, in the opinion of its council, than was afforded by the old bridges and grade-crossings, notwithstanding the inconvenience to a limited number of people. At any rate,

the council had statutory authority for its grant of rights in Mill Street, to the railroad company.

It is said the ordinance is void because, under a suspension of the rules of the council it was read three times and passed at a single session. The charter does not prescribe the mode of passing ordinances. It requires no prescribed number of readings. In the absence of a statutory restraint, a city council may prescribe its own rules. 28 Cyc. 353. What rules of proceedure the council has adopted are not disclosed by the record. Whatever they are, they may provide for suspension.

Three members of the council who voted for the ordinance, and whose votes were necessary to its passage, were employees of the railroad company. As such, they were not interested in the question on which they voted, nor in any sense disqualified to act upon it. Their interest did not extend beyond their salaries or wages. They had no interest in the railroad company nor in the privileges granted to it.

Neither the special charter of the city of Grafton, nor any provision in chapter 47 of the Code, requires any notice to be given for the establishment, alteration or discontinuance of a street or alley. The statutory provision requiring such notices to be given by county courts, respecting alterations and discontinuances of roads, are not made applicable to municipal corporations. For county courts, the procedure is prescribed. For municipal corporations, the power to make alterations and discontinuances is given, without any prescription of method or limitation. The marked difference between rural and urban conditions precludes extention to the latter, of statutes applicable to the former, by construction. It affords an ample basis for legislative discrimination and to say the legislature intended what it has not, in any way, indicated, would be a mere surmise.

From these principles and conclusions, it results that the decree complained of is erroneous and must be reversed, the injunction dissolved and the bill dismissed.

> *Reversed, injunction dissolved and bill dismissed.*