273 S.E.2d 818 (1980)
Juliet SERGE et al.
v.
Chester MATNEY et al.
No. 14832.
Supreme Court of Appeals of West Virginia.
November 18, 1980.
Dissenting Opinion January 20, 1981.
Camper & Seay and Harry G. Camper, Jr., Welch, for appellants.
William L. Jacobs, Parkersburg, for appellees.
*819 CAPLAN, Justice:
In removal proceedings instituted in the Circuit Court of McDowell County, certain citizens and taxpayers of said county sought the removal from office of Chester Matney and Thomas R. Lawson who had recently been elected to the office of county commissioner. The petition alleged that the commissioners had been guilty of official misconduct, malfeasance in office and neglect of duty.
Upon consideration of the evidence presented by the respective parties and upon examination of numerous exhibits submitted, the court entered an order removing both commissioners. In its order the court concluded that "defendants [appellants here] have been guilty of such official misconduct, malfeasance in office and neglect of duty as to warrant the removal of the defendants ... as commissioners of the County Commission of McDowell County, West Virginia." From that order the defendants prosecute this appeal. We affirm.
While several charges were alleged against the appellants, one of the most serious and one which is dispositive of this case is that they had voted for the salaries of their wives, who were county employees, in violation of W.Va.Code, 1931, 61-10-15, as amended. That statute provides, in pertinent part:
It shall be unlawful for any member of a county commission, overseer of the poor, district school officer, secretary of a board of education, supervisor or superintendent, principal or teacher of public schools, or any member of any other county or district board, or for any county or district officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for or the awarding or letting of, which as such member, officer, secretary, supervisor, superintendent, principal, or teacher, he may have any voice, influence or control: Provided, however, that nothing herein shall be construed to prevent or make unlawful the employment of the spouse of any such member, officer, secretary, supervisor, superintendent, principal or teacher, auxiliary or service employee in the public schools of any county ... Any person or officer named who shall violate any of the foregoing provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, be fined ... and may, in the discretion of the court, be imprisoned ... In addition to the foregoing penalties, any such officer shall be removed from his office ...
The above statute was enacted for the purpose of implementing the public policy of this State which policy prohibits public officers from becoming pecuniarily interested, directly or indirectly, in the proceeds of any contract or service in which he may have a voice. See Jordan v. McCourt, 135 W.Va. 79, 62 S.E.2d 555 (1950) and Alexander v. Ritchie, 132 W.Va. 865, 53 S.E.2d 735 (1949). Such statutes are often referred to as anti-nepotism statutes. In the instant case, the two removed commissioners were charged with voting on matters which would, at least indirectly, constitute a pecuniary interest to each of them; that is, voting for salary increases for their respective wives.
The evidence is uncontradicted that both Mr. Lawson and Mr. Matney voted on a proposed county budget that provided for raises for their respective wives. Mr. Lawson was fully cognizant of the fact that his wife was a deputy assessor and that she would in all probability receive an increase in salary upon the adoption of the 1979-1980 county budget.
The evidence likewise reflects that Mr. Matney not only voted for but recommended a salary increase for his wife, fully aware of the fact that her salary came from county funds. Mrs. Matney was an employee of the West Virginia University Extension Service.
The appellants were charged with official misconduct, malfeasance in office and neglect of duty. This Court in Hunt v. Allen, 131 W.Va. 627, 53 S.E.2d 509 (1948) held *820 that a member of a Board of Education who votes for the payment of the purchase price of goods known to have been sold to the board by another member of the board in violation of W.Va.Code, 1931, 61-10-15, is guilty of official misconduct and subject to removal from office under W.Va.Code, 1931, 6-6-7. Both Mr. Lawson and Mr. Matney voted for the county budget with knowledge that the wife of the other was scheduled for a salary increase. Under the reasoning in Hunt, the voting for a salary increase for a member's wife constitutes misconduct and subjects them to removal from office.
In Cimino v. Board of Education of the County of Marion, W.Va., 210 S.E.2d 485 (1974) this Court upheld the dismissal of a cook in the public schools after her husband was elected to the Board of Education. The statute at that time provided that "[i]t shall be unlawful for ... any member of any ... county ... board, or for any county or district officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for or the awarding or letting of, which as such member ... he may have any voice, influence or control: Provided, however, that nothing herein shall be construed to prevent or make unlawful the employment of the spouse of such member ... as principal or teacher in the public schools of any county..." W.Va.Code, 1931, 61-10-15, as amended. Subsequent to that case, the legislature amended that statute so as to make it possible for "auxiliary or service" employees in the public school systems to be retained or even hired as employees of the county system, even though their spouses later became members of the board.
The appellants argue that Mrs. Matney was an "auxiliary or service" employee within the meaning of the statute. We cannot agree. The statute refers to an "auxiliary or service employee in the public schools of any county ..." A public school is generally understood to be an elementary or secondary school and does not include colleges or universities. See Webster's New International Dictionary, 2d Ed. p. 2005. Not being an "auxiliary or service employee in the public schools", W.Va.Code, 1931, 61-10-15, as amended, affords no protection to Mrs. Matney.
The appellants further contend that if their wives are not "auxiliary or service" employees that the statute is unconstitutional in that it is highly discriminatory and denies them due process and equal protection of the law. They argue that even though the constitutionality of this statute was upheld in Dawson v. Phillips, 78 W.Va. 14, 88 S.E. 456 (1916), the recent amendment was not contained therein. This Court in Cimino, supra, again upheld the constitutionality of the statute. Again, the recent amendment was not contained in the statute at the writing of Cimino. We do not find the amended language to change the arguments pertaining to constitutionality. We are impressed with the reasoning employed in Backman v. Bateman and Tanner v. Bateman, 1 Utah 2d 153, 263 P.2d 561 (1953) but we are not prone to go against a recently announced decision of this Court. If the legislature wishes to establish exemptions or provide that personnel who have tenure with the county as employees of one of the numerous county agencies can retain their job even though their husbands have been elected to the county commission, then the legislature should do so. We cannot read that into the present statute. See Cimino for a discussion of the Equal Protection Clause.
This Court has consistently followed the long established rule that findings of fact by a trial court will not be set aside unless "clearly erroneous", "clearly wrong", or "plainly wrong". Mundy v. Arcuri, W.Va., 267 S.E.2d 454 (1980); Frasher v. Frasher, W.Va., 249 S.E.2d 513 (1978); Mahoney v. Walter, 157 W.Va. 882, 205 S.E.2d 692 (1974); McDaniel v. Romano, 155 W.Va. 875, 190 S.E.2d 8 (1972); and Lewis v. Dils Motor Co., 148 W.Va. 515, 135 S.E.2d 597 (1964). We are unable to say that the trial court was clearly wrong in the instant case.
*821 In view of our decision to uphold the trial court pertaining to the violation of W.Va.Code, 1931, 61-10-15, as amended, we deem it unnecessary to discuss further grounds for the removal of Chester Matney and Thomas Lawson.
Affirmed.
NEELY, Justice, dissenting:
I dissent from the majority opinion because upon a careful reading of the record the action of the defendants involved do not warrant removal from office. Any public official is constantly required to make complex decisions, and very few county level officers are lawyers, or for that matter, even college graduates. The majority opinion recognizes that the violation was hardly very obvious when it says:
In the instant case, the two removed commissioners were charged with voting on matters which would, at least indirectly, constitute a pecuniary interest to each of them; that is, voting for salary increases for their respective wives.
The majority opinion then goes on to indicate that what the commissioners did was to vote on a county budget which provided raises for their respective wives. There is no evidence to indicate that the raises for the respective wives were in excess of the ordinary raise afforded all employees to compensate for inflation and, furthermore, only an expert in state finance would immediately conclude that an employee of the West Virginia University Extension Service is a county employee.
Penal statutes are to be strictly construed and violating one "at least indirectly" does not amount to violating one. Furthermore, the courts should not lend themselves, as they have in this case, to nitpicking political infighting in the counties since it is quite obvious from the tone of this record that perfectly honorable county officials were attacked on technicalities in the courts because they could not be beaten at the polls. There is hardly an employee of any state government who has walked home from his office with a state pencil in his pocket who has not technically violated a law which would permit his removal from office. Deliberate intentional stealing is one thing; deliberate, intentional political hiring of incompetent relatives is in the same category; however, inadvertent unfamiliarity with the niceties of disqualification procedures when, as a fiduciary, a person has a personal interest in the outcome of a board decision, is hardly grounds for removal unless evil intent is proven. In the case before us there is not even the hint of an evil intent.