297 S.E.2d 444

**WEST VIRGINIA EDUCATION ASSOCIATION, etc., et al.**

v.

**PRESTON COUNTY BOARD OF EDUCATION, etc., et al.**

**No. 15451.**

Supreme Court of Appeals of West Virginia.

Oct. 28, 1982.

Jacqueline A. Kinnaman, WVEA, Charleston, L. Edward Friend, II, Tomasky & Friend, Morgantown, for appellants.

Edward D. McDevitt, Preiser & Wilson, Charleston, for appellees.

HARSHBARGER, Justice:

After Echols Jeffries became superintendent of Preston County schools on July 1, 1980, he nominated his wife, Nell K. Jeffries, to be Director of Curriculum and Instruction. She was interviewed by an assistant superintendent and found to be the most qualified applicant: her credentials included a Masters Degree with thirty additional hours of graduate credit, twenty-four years teaching experience, and over four years administrative responsibility in special education. A majority of the Board of Education affirmed her nomination and employed her effective August 4, 1980. Prior to her appointment, the Board solicited opinions from its counsel, Preston County Prosecutor Ronald Brown, and our Attorney General's office about the propriety of her employment, and was advised that there were no statutory impediments thereto.

She signed a standard teacher's contract for the statutorily mandated salary scale, W.Va.Code, 18A-4-2. She also received a $525 per month salary supplement paid from county funds per Code, 18A-4-5 to all Preston County school administrators who were "directors".

On September 19, 1980, West Virginia Education Association (WVEA), its affiliate, Preston County Education Association, and Gidley, a taxpayer, sought a declaratory judgment in Preston County Circuit Court that Ms. Jeffries' nomination and hiring violated W.Va.Code, 61-10-15.[1]

---

1. W.Va.Code, 61-10-15:
   "It shall be unlawful for any member of a county commission, overseer of the poor, district school officer, secretary of a board of education, supervisor or superintendent, principal or teacher of public schools, or any member of any other county or district board, or for any county or district officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of, which as such member, officer, secretary, supervisor, superintendent, principal, or teacher, he may have any voice, influence or control: Provided, however, that nothing herein shall be construed to prevent or make unlawful the employment of the spouse of any such member, officer, secretary, supervisor, superintendent, principal or teacher as principal or teacher, auxiliary or service employee in the public schools of any county, nor to prevent or make unlawful the employment by any joint county and circuit clerk of his or her spouse. Any person or officer named who shall violate any of the foregoing provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned for a period not to exceed one year. In addition to the foregoing penalties, any such officer shall be removed from his office and the certificate or certificates of any teacher, principal, supervisor and superintendent who violates any provision of this section shall upon conviction thereof, be revoked immediately. Any person, firm or cor-

They prayed that Mr. Jeffries and those Board of Education members who voted to hire her be removed.[2] Defendants answered, defended affirmatively, and moved for judgment on the pleadings and for dismissal; and the trial judge dismissed the complaint with prejudice. WVEA appealed.

## I.

A superintendent of schools must nominate and recommend all persons to be employed as professional personnel in the county. Code, 18A-2-1. The county board of education votes whether to approve his nominations. If the board does not adopt his recommendations, our Code requires him to submit alternative nominations. Nominations are limited to persons meeting statutory eligibility, training and certification requirements.

A superintendent is prohibited from directly or indirectly obtaining proceeds from any contract or service about which he may have had a "voice, influence or control." Code, 61-10-15. Violation of Code, 61-10-15 is a misdemeanor, grounds for removal from office, and for revocation of professional certificates. This criminal statute contains a proviso:

> Provided, however, that nothing herein shall be construed to prevent or make unlawful the employment of the spouse of any such member, officer, secretary, supervisor, superintendent, principal or teacher *as principal or teacher, auxiliary or service employee* in the public schools of any county .... W.Va.Code, 61-10-15. (Emphasis added.)

■ The trial court, we believe erroneously, found Mrs. Jeffries to be a "teacher" within the meaning of Code, 61-10-15 and,

therefore, her appointment did not violate the statute's prohibitions.

Code, 18-1-1(g) defines teacher:

> (g) "Teacher" shall mean teacher, supervisor, principal, superintendent, public school librarian; registered professional nurse, licensed by the West Virginia board of examiners for registered professional nurses and employed by a county board of education, who has a baccalaureate degree; or any other person regularly employed for instructional purposes in a public school in this state;

Code, 18A-1-1(c) also provides a definition of teacher:

> (c) "Professional educator" shall be synonymous with and shall have the same meaning as "teacher" as defined in section one [§ 18-1-1], article one, chapter eighteen of this Code. Professional educators shall be classified as:
>
> .  .  .  .  .
>
> (2) "Principal": The professional educator who as agent of the board has responsibility for the supervision, management and control of a school or schools within the guidelines established by said board. The major area of such responsibility shall be the general supervision of all the school and all school activities involving pupils, teachers and other school personnel.
>
> .  .  .  .  .
>
> (4) "Central office administrator": The superintendent, associate superintendent, assistant superintendent, and other professional educators, whether by these or other appropriate titles, who are charged with the administering and su-

---

poration that offers or gives any compensation or thing of value or forebears to perform any act whatever to any of the officers or persons hereinbefore named or to or for any other person with the intent to secure the influence, support or vote of such officer or person for any contract, service, award or other matter as to which any county or school district shall become the paymaster, shall be guilty of a misdemeanor, and, upon conviction thereof, be fined not less than five hundred, nor more than twenty-five hundred dollars, and, at the discretion of the court, such person or any member of such firm, or, if it be a corporation, any agent or

officer thereof, so offering or giving such compensation, may, in addition to such fine, be imprisoned for a period not to exceed one year.

"The provisions of this section shall not apply to publications in newspapers required to be made by law."

2. Mr. Jeffries served as Superintendent until June 30, 1982. He is presently employed as a teacher in Preston County. Apparently, one board of education member who voted for Mrs. Jeffries' appointment is no longer on the board either.

pervising of the whole or some assigned part of the total program of the county-wide school system.

*Smith v. Siders*, 155 W.Va. 193, 183 S.E.2d 433 (1971), and Code, 18A–1–2 instruct us to read Chapters 18 and 18A *in pari materia* and to use Chapter 18A provisions when they are inconsistent with those in Chapter 18. According to 18A as applied to 18, a "teacher" is a "professional educator" and may be either a "principal" or "central office administrator". Mrs. Jeffries is a "central office administrator" and, therefore, a teacher for purposes of Chapters 18 and 18A.

However, it does not make sense to apply the broad Chapter 18A teacher definition to Code, 61–10–15's exemption from self-dealing or nepotism rules. "Teacher", as defined by Chapters 18 and 18A, automatically includes principals. Code, 18A–1–1(c)(2). Therefore, the separate listing of both "principal" and "teacher" in Code, 61–10–15 indicates a legislative intent to define "teacher" by a standard, common understanding of the term rather than by a definition that perforce includes principals.[3]

Our rules of construction instruct us to attempt to give meaning to every word in a statute, *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 251 S.E.2d 505 (1979); *Wooddell v. Dailey*, 160 W.Va. 65, 230 S.E.2d 466 (1976); *Spencer v. Yerace*, 155 W.Va. 54, 180 S.E.2d 868 (1971), and to avoid interpreting a word in a way that makes it repetitious of another. *Ex parte Watson*, 82 W.Va. 201, 95 S.E. 648 (1918); *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907).

We have used dictionary definitions to clarify problems in application of Code, 60–10–15 before, *Serge v. Matney*, 165 W.Va. 801, 273 S.E.2d 818, 820 (1980), and our explorations reveal that the commonly accepted meaning of "teacher" is comparable to Chapter 18A–1–1(c)'s "classroom teacher":

(1) "Classroom teacher": The professional educator who has direct instructional or counseling relationship with pupils, spending the majority of his time in this capacity.

*See also* Webster's Third New International Dictionary (1976) ("teacher": one that teaches or instructs; one whose occupation is to instruct); Funk & Wagnalls New Standard Dictionary of the English Language (1963) ("teacher": one who teaches or instructs; especially, one whose business or occupation is to teach others; an instructor).

Legislative recognition that there are differences between individuals working in a specific school directly with students (principals and teachers), and those in a central office administering a school system and supervising other professional personnel, is logical. One glaring distinction is presented in this case: Mrs. Jeffries' salary as central administrator was supplemented by $525 per month in county funds, beyond her teacher's salary. This remuneration from county funds inured to her husband's, the superintendent's, benefit. It is that very kind of self-dealing with public trust and funds that Code, 61–10–15 was designed to prevent. *Cimino v. Board of Education*, 158 W.Va. 267, 210 S.E.2d 485 (1974).

A superintendent's nomination of his wife for a central administrator's position violates Code, 61–10–15.

■ WVEA sought a declaratory judgment pursuant to Code, 5–13–1. Our Code provides a distinct remedy for removal of county, district and municipal officers having fixed terms. Code, 6–6–7. *Hall v. Pizzino*, 164 W.Va. 331, 263 S.E.2d 886 (1980); *Serge v. Matney, supra; Cimino v. Board of Education, supra.* Removal proceedings must comply with that section and may not be appended to a declaratory judgment action. Because Mr. Jeffries is no

---

3. We know that Code, 61–10–15 was drafted before Code, 18A–1–1(c). However, in 1977, Code 61–10–15's exemption was examined by the Legislature and amended. It previously amended the "principal" definition in 18A–1–1(c)(2) in 1975. Our Legislature is presumed to know of prior enactments and have full knowledge of all laws in the area in which it acts.

*State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959); *Marion v. Chandler*, 139 W.Va. 596, 81 S.E.2d 89 (1954); *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953); *Harbert v. County Court*, 129 W.Va. 54, 39 S.E.2d 177 (1946); *State ex rel. County Court v. Keedy*, 124 W.Va. 408, 20 S.E.2d 468 (1942).

longer a superintendent, Code, 6–6–7 proceedings are unnecessary, *Roberts v. Paull*, 50 W.Va. 528, 40 S.E. 470 (1901), and his violation of Code, 61–10–15, a misdemeanor, is subject to our one-year statute of limitations, Code, 61–11–9.

Reversed.