367 S.E.2d 209

**SUMMERS COUNTY CITIZENS LEAGUE, INC., W.C. Parker, Jr., J.D. Worles, J.T. Meadows, Walter Pack and Ula D. Parker**

v.

**Demetrius E. TASSOS, Superintendent of Schools of Summers County; David L. Ziegler, Clyde Grimmett, David Honaker and Donald Mock, Members of Summers County Board of Education.**

No. 17912.

Supreme Court of Appeals
of West Virginia.

March 4, 1988.

George A. Mills, III, Huntington, for Summers County citizens League.

David L. Parmer, Hinton, for Demetrius E. Tassos.

McHUGH, Chief Justice:

This case is before this Court upon appeal from a final order of the Circuit Court of Summers County, West Virginia ("the trial court"), in which order the trial court refused to remove certain county officers from office. This Court has reviewed the petition, all matters of record and the briefs and oral argument of counsel. We affirm in part, reverse in part and remand.

## I.

### A. *Facts*

The five individual appellants, petitioners below, were, at all relevant times, voters of Summers County, West Virginia.[1] The sixth appellant, Summers County Citizens League, Inc., was, at all relevant times, a nonprofit West Virginia corporation. The appellees, three of the members of the Summers County Board of Education at all times relevant herein (Messrs. Grimmett, Honaker and Mock) and the Superintendent of Schools of Summers County (Mr. Tassos), were respondents below.[2]

The material facts are uncontroverted. Clyde Grimmett, a member of the Summers County Board of Education ("the Board"), was, at all relevant times, employed by R.T. Rogers Oil Company as a driver of a truck hauling and making deliveries of gasoline and fuel oil. The Board purchases all of its gasoline and fuel oil for school buses from R.T. Rogers Oil Company, without competitive bidding. Appellee Grimmett has never been a shareholder, director or officer of R.T. Rogers Oil Company, which is the only supplier of gasoline and fuel oil located in Summers County. Other potential suppliers of gasoline and fuel oil are

---

1. *W.Va.Code,* 6-6-7 [1931] provides in pertinent part:

    Any person holding any county ... office, including the office of a member of a board of education, the term or tenure of which office is fixed by law, whether elected or appointed thereto, ... may be removed by the circuit court of the county wherein such officer or person resides, ... on any of the grounds, or for any of the causes, for which a state officer may be removed under section five of this article [*W.Va.Code,* 6-6-5] or for any of the causes or on any of the grounds provided by any other statute. The charges may be preferred, in the case of any county officer, by ... any five or more voters [of the county]; ...

The 1985 amendment to this statute is not applicable to this case.

*W.Va.Code,* 6-6-5 [1931], mentioned in *W.Va.Code,* 6-6-7 [1931], provides, *inter alia,* that most elected state officers may be removed from office "for official misconduct, ..."

A violation of *W.Va.Code,* 61-10-15 [1977], *see infra* note 7, constitutes official misconduct under *W.Va.Code,* 6-6-7 [1931]. Syl. pt. 3, *Kesling v. Moore,* 102 W.Va. 251, 135 S.E. 246 (1926).

2. Another respondent below was Mr. Ziegler. His term as a member of the Summers County Board of Education expired prior to the filing of this appeal, and he is no longer serving on the Board. The appellants therefore admit that the removal proceeding is now moot as to him.

located in adjacent counties.[3]

David Honaker, a member of the Board, was, at all relevant times, employed as manager of and salesman for the Hinton TV Corporation, the only supplier of cable television services in the City of Hinton, Summers County. The Board purchases for certain of the Hinton area schools cable television services from Hinton TV Corporation at a charge of $1.00 per connection per month. Appellee Honaker has never been a shareholder, director or officer of Hinton TV Corporation. A satellite system installed by companies other than Hinton TV Corporation was a possible alternative source of television program reception.[4]

Donald Mock, a member of the Board, approved payments to R.T. Rogers Oil Company and Hinton TV Corporation. He knew that his colleagues on the Board, Clyde Grimmett and David Honaker, were employed, respectively, by those two vendors to the Board.

Demetrius Tassos, Superintendent of Schools of Summers County, owned 880 shares of stock of the First National Bank of Hinton [5] at the time he was appointed Superintendent of Schools and at the time shortly thereafter when the Board adopted a policy giving preference to banks located in Summers County with respect to investment of the Board's funds.[6] Under that policy an out-of-county bank was required to bid at least two-thirds of one percent higher than in-county banks to obtain the investment of the Board's funds.

The in-county bank investment-preference policy was suggested by appellee Grimmett after he and another member of the Board, Mr. Ziegler, returned from a conference for newly elected members of county boards of education. At that conference appellee Grimmett learned that twenty to thirty other counties had similar in-county bank investment-preference policies. Appellee Grimmett voted in favor of the Board's in-county bank investment-preference policy, while appellee Mock abstained. Appellee Honaker had not yet been elected to the Board.

During the period that the Board's in-county bank investment-preference policy was in effect, the First National Bank of Hinton was the successful bidder each time bids were invited by the Board's financial secretary, a Mr. Billy Kessler. If the in-county bank investment-preference policy had not been in effect and the Board's funds had been invested in the out-of-county banks which were the actual high bidders, the Board would have received $1,021.99 more interest than was received by the Board because of such policy.

Appellee Tassos attempted to sell his First National Bank of Hinton stock for a short period of time prior to the Board's adoption of the in-county bank investment-preference policy, but was unable to sell the same at book value. He later sold the stock, at a loss, for about $25,000.00. The sale occurred after the Board rescinded the in-county bank investment-preference policy in favor of investment in the State's consolidated fund. Appellee Tassos had sold all of his bank stock prior to the institution of this removal proceeding.

At the time the in-county bank investment-preference policy was adopted, the Board's financial secretary was aware that appellee Tassos was a First National Bank of Hinton stockholder. In addition, appellee Tassos testified that the members of the Board probably knew of his ownership of the bank stock because "there's not much in Summers County that people don't know."

3. The record indicates that at least one of the out-of-county distributors of gasoline and fuel oil would be interested in furnishing gasoline at the Board's main fuel storage tank but would be reluctant to furnish products in the relatively small quantities required by the Board at a couple of its fuel storage tanks in outlying areas of the county.

4. The record is silent as to the costs and other details of a satellite system for television program reception. Also, at least one other cable television company is located in the county.

5. The record does not indicate the percentage of total shares of First National Bank of Hinton stock which was owned by appellee Tassos.

6. The First National Bank of Hinton and the National Bank of Summers County were the only two banks located in Summers County.

There is no evidence of fraud, bad faith, corruption or evil intent on the part of any of the appellees with respect to the matters outlined above.

### B. *Trial Court Rulings*

The appellants brought this proceeding to remove the appellees from office for alleged official misconduct, *see supra* note 1, *W. Va. Code*, 6-6-5 [1931] and *W. Va. Code*, 6-6-7 [1931], resulting from the appellees' allegedly having pecuniary interests in contracts of the Board in violation of *W. Va. Code*, 61-10-15 [1977].[7]

The trial court ruled in favor of each of the appellees. With respect to appellee Grimmett's and appellee Honaker's employment by vendors of supplies or services to the Board of which they were at the time members, the trial court concluded as a matter of law that *W. Va. Code*, 61-10-15 [1977] does not apply to mere employees but only to shareholders, directors or officers of corporations doing business with a county board or officer. The trial court also found that there were no alternative sources for the supplies or services in question (gasoline and fuel oil and cable television services). Therefore, the trial court was of the opinion that, under case law, the appellees did not have any voice, influence or control as to the contracts in question. Finally, the trial court found that there was no waste of public funds from the gasoline and fuel oil and cable television transactions.

With respect to appellee Tassos' ownership of local bank stock during the time the Board had an in-county bank investment-preference policy, the trial court found that appellee Tassos did not participate in or exercise any influence as to the Board's decision to prefer in-county banks. The trial court also concluded that there was nothing illegal with an in-county bank investment-preference policy and found that there was no waste of public funds, as the loss of interest income was likely offset by the expense and time saved by not having to travel out of the county to make investment deposits.[8]

## II.

### A. *Withdrawal of a Petitioner/Appellant*

■ The appellees raise two preliminary matters. First, they assert that this appeal may not now be maintained because Walter Pack, one of the appellants, petitioners below, has submitted an affidavit indicating that he wishes his name to be stricken from the appeal. The appellees assert that dismissing one of the five individual petitioners/appellants would leave less than the minimum number of five voters required to maintain the removal proceeding and an appeal by the voters.

We believe this assertion of the appellees is without merit. An attempt by one of a number of plaintiffs/appellants to withdraw from the case after the final decree and after entry of the appeal in the appellate court comes too late and usually will be disregarded. *Old Colony Trust Co. v. Merchant Enterprises, Inc.*, 332 Mass. 484, 485, 126 N.E.2d 112, 113 (1955).

### B. *Reelection of Certain Appellees*

■ The second preliminary matter raised by the appellees involves their contention that the reelection of appellees Tas-

---

7. *W. Va. Code*, 61-10-15 [1977] provides in relevant part:

It shall be unlawful for any ... superintendent ... of public schools, or any member of any ... county ... board, or for any county ... officer to be or become pecuniarily interested, directly or indirectly, in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the awarding or letting of [such contract], which as such member, officer ... [or] superintendent, ... he [or she] may have any voice, influence or control.... In addition to ... [misdemeanor] penalties, any such officer shall be removed from his [or her] office....

*See also W. Va. Const.* art. XII, § 9 (prohibits persons connected with the free school system of the State from being interested in the sale, proceeds or profits of any book or other thing used or to be used therein, under penalties prescribed by law).

8. Due to our disposition of this case on these matters, it is not necessary to discuss the alleged unlawful action of the Board in establishing a salary of the Hinton High School principal in excess of the salaries of principals of other schools in the county.

sos, Grimmett and Mock after the transactions in question moots the removal petition as to them.[9] They rely upon syllabus point 1 of *Smith v. Godby,* 154 W.Va. 190, 174 S.E.2d 165 (1970), which states: "As a general rule offenses committed or acts done by a public officer during a previous term of office are not cause for removal from office in the absence of disqualification to hold office in the future or additional penalty imposed by law upon the person removed from office."

The contention of the appellees is not well taken. Syllabus point 1 of *Smith v. Godby* must be read in light of the facts contained in the body of the opinion. *See, e.g., State v. Franklin,* 139 W.Va. 43, 57, 79 S.E.2d 692, 700 (1953) (collecting cases). When so read, *Smith v. Godby* does not stand for the proposition that the reelection of a public officer moots a removal proceeding against such officer regardless of when such a proceeding was brought. Such a rule would penalize the petitioners in the removal proceeding for the delays inherent in litigation, such as the time it takes for the court to render its decision. Under *W.Va.Code,* 6–6–7, as amended, a threshold question is whether the removal proceeding was *filed* during the term of the public officer in which the transaction(s) in question occurred. If so, the subsequent reelection of the public officer has no effect on the removal proceeding. Such is the case here with respect to appellees Tassos, Grimmett and Mock. In *Smith v. Godby,* in contrast, the removal proceeding was filed during a term of the public officer subsequent to the term in which some of the transactions in question occurred, and the Court held that those particular transactions could not constitute grounds for removal from office.

Having addressed these preliminary matters, we now turn to the more vital questions presented by this appeal.

### III.

#### A. *W.Va.Code, 61–10–15 and Private Employees*

■ *W.Va.Code,* 61–10–15, as amended, *see supra* note 7, prohibits a county officer

from becoming pecuniarily interested, directly or indirectly, in the proceeds of any contract or service in which he or she may have a voice, influence or control. *Serge v. Matney,* 165 W.Va. 801, 803, 273 S.E.2d 818, 819 (1980). We recently summarized the purposes of this statute in syllabus point 1 of *State v. Neary,* 179 W.Va. 115, 365 S.E.2d 395 (1987):

> The public policy of this State, as evidenced by W.Va.Code, 61–10–15, as amended, is not directed against actual fraud or collusion, but is for the purpose of preventing those acts and eliminating any opportunity therefor. The purpose of the statute is to protect public funds, and give official recognition to the fact that a person cannot properly represent the public in transacting business with himself.

*Accord, Jordan v. McCourt,* 135 W.Va. 79, 86, 62 S.E.2d 555, 560 (1950); *Alexander v. Ritchie,* 132 W.Va. 865, 871, 53 S.E.2d 735, 739 (1949). This statute's " 'provisions are clear and unambiguous. Although harsh, its objects and purposes are salutary.' " *State v. Neary,* 179 W.Va. at 118, 365 S.E.2d at 398 (1987), *quoting Alexander v. Ritchie,* 132 W.Va. 865, 871, 53 S.E.2d 735, 739 (1949).

An excellent statement of the policy considerations behind *W.Va.Code,* 61–10–15, as amended, is contained in *Hunt v. Allen,* 131 W.Va. 627, 635, 53 S.E.2d 509, 514 (1948):

> [The] conduct was unlawful because forbidden by statute or was *malum prohibitum* as distinguished from *malum in se.* Membership of a board of education is a matter of high public trust charged with the most sacred governmental duty known to us. The office should be filled by persons of the highest character procurable and our Legislature has undertaken to throw safeguards around that office in order that the discharge of its high responsibilities shall be jeopardized as little as possible. Code, 61–10–15, is

---

**9.** Appellee Honaker's term of office, his first

term of office, expires at the end of 1988.

one of these safeguards. It forbids a pecuniary interest by a member of the board of education in any contract with the board. As we have already pointed out, it goes far beyond imposing a penalty upon actual corruption. It recognizes as a matter of public policy that a pecuniary interest might, and in many instances would, subject members of boards of education to harmful suspicion of corruption and that in some instances there would be created a borderland where the distinction between honesty and corruption would not be pronounced. Wishing to avoid discriminations that might result from considering the question of degree, our Legislature very wisely forbade members of boards of education from having a pecuniary interest directly or indirectly in any sort of a contract with a board of education of which they were a member, providing that it should be a criminal offense [and an impeachable offense] to do so.

"A conviction of a misdemeanor is not a prerequisite to a proceeding under Code, 6–6–7, and Code, 61–10–15, as amended, for the purpose of removing a person from office." Syl. pt. 3, *Jordan v. McCourt*, 135 W.Va. 79, 62 S.E.2d 555 (1950). Moreover, the removal provisions of *W.Va.Code*, 61–10–15, as amended, being for a salutary public purpose, should be rigidly enforced. *Id.* 135 W.Va. at 86, 62 S.E.2d at 560. For example, this Court in a related context has held that "[w]aste of public funds is not an absolute requirement to removal of a person from office under the provisions of *W.Va.Code*, 6–6–7 [1931]; however, waste of public funds may be considered with respect to the removal of a person from office under that statute." Syl. pt. 4, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984). The same is true with respect to establishing a violation of *W.Va.*

*Code*, 61–10–15, as amended. *See Jordan v. McCourt*, 135 W.Va. 79, 90, 62 S.E.2d 555, 562 (1950); *Alexander v. Ritchie*, 132 W.Va. 865, 872, 874–75, 53 S.E.2d 735, 740, 741 (1949).

The discussion, in *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961), of a similar federal statute prohibiting a government agent from having a direct or indirect pecuniary interest in a contract between the government and a private entity with which the government agent is affiliated provides some important principles which apply also to *W.Va.Code*, 61–10–15, as amended. In *Mississippi Valley Generating* the Supreme Court of the United States analyzed 18 *U.S.C.* § 434, then in effect.[10] The moral principle upon which the statute was based is set forth in the biblical admonition that no man may serve two masters, *Matthew* 6:24, a maxim which is especially pertinent if one of the masters happens to be economic self-interest. 364 U.S. at 549, 81 S.Ct. at 308–09, 5 L.Ed.2d at 288.

The statute speaks in very comprehensive terms, without numerous provisos and exceptions. Significantly, the statute does not require that there be actual corruption on the part of the government agent or that there be any actual financial loss sustained by the government. The statute consequently establishes an objective standard of conduct. It is directed not only at dishonor, but also at conduct that tempts dishonor. *Id.* at 549, 81 S.Ct. at 309, 5 L.Ed.2d at 288. "[T]he statute is more concerned with what might have happened in a given situation than with what actually happened. It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation." *Id.* at 549–50, 81 S.Ct.

---

10. 18 *U.S.C.* § 434, prior to its repeal in 1962, provided:

> Whoever, being an officer, agent or member of, or directly or indirectly interested in the pecuniary profits or contracts of any corporation, joint-stock company, or association, or of any firm or partnership, or other business entity, is employed or acts as an officer or agent of the United States for the transac-

tion of business with such business entity, shall be fined not more than $2,000 or imprisoned not more than two years, or both.

The more detailed current coverage of this subject matter is set forth in 18 *U.S.C.* § 208, last amended in 1977. The current federal statute expressly applies to employees of private business organizations who are also government agents.

at 309, 5 L.Ed.2d at 288. *See also Graf v. Frame*, 177 W.Va. 282, 287–288, 352 S.E.2d 31, 36–37 (1986) (public officers are "trustees" of the people and owe a fiduciary duty to avoid a collision of personal and public interests; the public officer's good faith is of no moment because the policy of the law is to keep the public officer so far from temptation as to insure the exercise of unselfish public interest).

■ Thus, like the federal statute, *W.Va.Code*, 61–10–15, as amended, is preventive in nature; it provides an absolute standard of conduct which is violated by entering into or continuing a relationship with a private entity where that relationship may make it difficult for the county officer to represent the public with the singleness of purpose required by the statute. The statute forbids a county officer from engaging in business transactions on behalf of the public if, by virtue of his or her private interests, he or she may benefit financially, directly or indirectly, from the outcome of those transactions. The question is not whether the county officer was certain to benefit from the contract, but whether the likelihood that the county officer might benefit was so great that he or she would be subject to those temptations which the statute seeks to avoid. *Mississippi Valley Generating*, 364 U.S. at 559, 560, 562, 81 S.Ct. at 314, 315, 5 L.Ed.2d at 294, 296.

The prohibition of *W.Va.Code*, 61–10–15, as amended, was therefore designed, like the federal statute, to protect the public from the mistakes, as well as the connivance, of its officers. Accordingly, even if the result in a given case may seem harsh, that result is dictated by the public policy manifested by the statute. The policy so clearly expressed by the statute leaves no room for equitable considerations. If that policy is to be limited by exceptions, it is usually the function of the legislature, and not of this Court, to spell out such exceptions. *Mississippi Valley Generating*, 364 U.S. at 561, 565, 81 S.Ct. at 315, 317, 5 L.Ed.2d at 295, 297.[11]

■ The crucial question to be decided in the case now before us is whether, under *W.Va.Code*, 61–10–15, as amended, a county officer is "pecuniarily interested, directly or indirectly, in the proceeds of any contract or service," where the county officer is an employee, but not also a shareholder, director of officer, of a corporation which is the other party to the contract.

This question was presented in *Fisher v. Jackson*, 107 W.Va. 138, 147 S.E. 541 (1929). In *Fisher* a member of a board of education was hired by a person having a contract with the board to do concrete work. That board member, after completion of the work, joined in approving payment to his private employer. The Court affirmed the trial court's removal of such board member from office. "A member of the board will not be permitted to participate in the letting of a contract to one, and then derive benefit indirectly therefrom by working for the party obtaining the contract. The plain mandate of the statute denies him the right to receive a benefit by indirection where he may not profit directly." *Id.*, 107 W.Va. at 140, 147 S.E. at 542.

The Court, in *Fisher v. Jackson*, also held that the predecessor to *W.Va.Code*,

---

11. This Court has recognized a couple of very limited exceptions to the prohibition of *W.Va. Code*, 61–10–15, as amended. First, in *Jordan v. McCourt*, 135 W.Va. 79, 87, 62 S.E.2d 555, 561 (1950), it was concluded that a technical violation of the statute, involving an item costing $1.30, was *de minimus* and was insufficient by itself to constitute a ground for removal from office. *See also Evans v. Hutchinson*, 158 W.Va. 359, 365, 214 S.E.2d 453, 458 (1975), *questioned on another point, Lane v. Blair*, 162 W.Va. 281, 288 n. 2, 250 S.E.2d 124, 127 n. 2 (1978) (Miller and McGraw, JJ., concurring).

Second, the Court in the sole syllabus point of *Dials v. Blair*, 144 W.Va. 764, 111 S.E.2d 17 (1959), held that *W.Va.Code*, 61–10–15, as amended, does not apply where members of a county board of education approve payments of water bills to two corporations in which one of the members of the board was a shareholder and officer and to a partnership in which he was a partner because he had no "voice, influence or control" with respect to the supplying of the water, in light of the fact that the board member's water companies were the only available sources of water supply. We discuss later in this opinion whether this defense of "monopoly" is applicable to this case.

61–10–15 [1977] was violated even though the board member who was sought to be removed abstained from voting at the outset on the award of the contract to his private employer.

> To permit a member of a district [now county] school board, by reason of nonaction on his part in regard to a particular matter, to receive pecuniary benefit therefrom, either directly or indirectly, would defeat the very purpose of the statute, for it would permit connivance on the part of the several members and the awarding of contracts so as to inure indirectly to their benefit.

*Id.*, 107 W.Va. at 140–41, 147 S.E. at 542.

We are aware of language in three opinions of this Court which supports a contrary holding on the applicability of *W.Va. Code*, 61–10–15 [1977] to county officers who are not shareholders or officers, but who are employees, of businesses having contracts with the county. For example, "[t]he mere fact that Blair received a salary as an employee of the water companies would not constitute sufficient grounds for his removal as a member of the Board of Education." *Dials v. Blair*, 144 W.Va. 764, 767, 111 S.E.2d 17, 19 (1959). This language was not, however, necessary to the Court's decision, as the respondent board member was also a shareholder in the corporate water companies and was a partner in the water company doing business as a partnership. Moreover, *Dials* turned upon the fact that the respondent board member did not have a "voice, influence or control" with respect to the water supply contracts because there were no alternative sources of water supply. *See supra* note 11. *Fisher v. Jackson* was not mentioned in *Dials v. Blair*.

In *Arbogast v. Shields*, 123 W.Va. 167, 175, 14 S.E.2d 4, 8 (1941), the Court in a removal proceeding based upon an alleged violation of a municipal charter worded very similarly to *W.Va.Code*, 61–10–15 [1977], stated: "It may be that, in his capacity, as salaried manager independently of the company's profits, Shields would not be a transgressor." Again, however, this language was not necessary to the Court's

decision, as the respondent member of a municipal water board was a shareholder, as well as an employee, of an insurance corporation having insurance contracts with such board. The Court affirmed the removal of the respondent from office based upon his pecuniary interest as a shareholder of the insurance corporation. *Id.*, syl. pt. 4. *Fisher v. Jackson* was not mentioned in *Arbogast v. Shields*.

Both *Dials v. Blair* and *Arbogast v. Shields* cite *County Court v. City of Grafton*, 77 W.Va. 84, 86 S.E. 924 (1915). That case involved, not a removal proceeding, but a proceeding to enjoin the enforcement of a municipal ordinance concerning rights granted to a railroad corporation. In syllabus point 6 of the opinion the Court held, without citation of authority in the opinion, that "[m]embers of a city council are not disqualified to vote or act upon an ordinance granting privileges in a city street to a railroad company, by their status as employees of the company."

With respect to proceedings to remove public officers, the above-quoted dicta in *Dials v. Blair* and *Arbogast v. Shields* are of obviously questionable validity, not only as the result of the directly opposite holding in *Fisher v. Jackson*, but also in light of the holdings in other jurisdictions.

The test or standard to determine whether there is a pecuniary interest in a contract, proscribed by statutes like *W.Va. Code*, 61–10–15, as amended, is whether the direct or indirect interest of the public officer in the business and welfare of the other contracting party is such as would naturally tend to affect the public officer's judgment in determining whether to let the contract. *Brown v. Kirk*, 33 Ill.App.3d 477, 482–83, 342 N.E.2d 137, 141 (1975), *rev'd on other grounds*, 64 Ill.2d 144, 355 N.E.2d 12 (1976). The personal interest of a public officer in a contract made by the public officer in an official capacity may be indirect only; still such interest would be sufficient to taint the contract with illegality. If the public officer's interest in the contract is such as would tend in any degree to influence him or her in making the contract, then the interest is prohibited and

the contract is void because contrary to the public policy that a public officer in the discharge of his or her duties should be absolutely free from any influence other than that which grows directly out of the obligations which the public officer owes to the public at large. *Stockton Plumbing & Supply Co. v. Wheeler*, 68 Cal.App. 592, 602, 229 P. 1020, 1024 (1924).

Cases are numerous in which it has been held that one who is an employee of another individual or a corporation or partnership, and at the same time a member of a public body, is ineligible as a public officer to make or assist in making a contract with the private entity employing such officer, and that a contact so made is void upon the principle that such act would contravene public policy. *Id.* at 602, 229 P. at 1024. In that case the court stated:

> [I]t would be exceedingly strange if Charlesworth [the public officer/private employee] were not to a considerable extent desirous of the awarding of the contract to his employer.... [T]he interest which Charlesworth had in the petitioner's [the private employer's] business would be sufficient to invalidate any contract made by a public officer in which he [or she] had a similar interest.

*Id.* The court further stated:

> While ... he would not derive direct pecuniary gain from the contract, he certainly would indirectly be so benefited, since upon the success of the petitioner's [the private employer's] business ... primarily depends the continued tenure of his position and the compensation which he receives for performing the service required of him as the foreman....

*Id.* The same is true for appellees Grimmett and Honaker in the present case.

Other cases on point include *Hobbs, Wall & Co. v. Moran*, 109 Cal.App. 316, 293 P. 145 (1930), in which it was held that a city councilman had a prohibited "indirect interest" in a contract of the city with a mercantile concern for which he was a salaried business manager, even though he did not own any shares of stock of such concern; *Yonkers Bus, Inc. v. Maltbie*, 23 N.Y.S.2d 87, 90, 91 (Sup.Ct.), *aff'd on another point*, 260 A.D. 893, 23 N.Y.S.2d 91 (1940), holding that a proscribed "interest" in a contract may be a person's interest in the general welfare and prosperity of the private employer, without being a shareholder; an interest "directly or indirectly" in a contract may include an interest for which the fruition is postponed or implicit, as well as one which is immediate and in stated terms, as this is the intent fairly expressed in the statute.

Accordingly, this Court holds that, under *W.Va.Code*, 61-10-15, as amended, a county officer is "pecuniarily interested, directly or indirectly, in the proceeds of any contract or service," where the county officer is an employee of a private entity which is the other party to the contract with the county, whether or not the county officer is also a shareholder, director or officer of such private entity. *See Fisher v. Jackson*, 107 W.Va. 138, 147 S.E. 541 (1929).

■ Under this principle, appellees Grimmett and Honaker violated *W.Va.Code*, 61-10-15 [1977] and must be removed from office by virtue of their approving payments by the Board to their respective private employers for supplies or services furnished to the Board. *See* syl. pt. 1, *Jordan v. McCourt*, 135 W.Va. 79, 62 S.E.2d 555 (1950); syl. pt. 1, *Alexander v. Ritchie*, 132 W.Va. 865, 53 S.E.2d 735 (1949). Appellee Mock, by approving payments by the Board to the private employers of appellees Grimmett and Honaker, with knowledge of their employment by persons contracting with the Board, was guilty of official misconduct and must be removed from office under *W.Va.Code*, 6-6-7 [1931]. *See* syl. pt. 2, *Jordan v. McCourt*, 135 W.Va. 79, 62 S.E.2d 555 (1950); syl. pt. 2, *Alexander v. Ritchie*, 132 W.Va. 865, 53 S.E.2d 735 (1949); syl. pt. 2, *Hunt v. Allen*, 131 W.Va. 627, 53 S.E.2d 509 (1948).

### B. The "Monopoly" Defense

■ Relying upon the sole syllabus point of *Dials v. Blair*, 144 W.Va. 764, 111 S.E.2d 17 (1959), *see supra* note 11, the trial court held that *W.Va.Code*, 61-10-15 [1977] did not prohibit the sales of supplies or services to the Board by the private

employers of appellees Grimmett and Honaker because there were no alternative sources of supply. We disagree.

A similar defense was rejected in *Jordan v. McCourt*, 135 W.Va. 79, 62 S.E.2d 555 (1950). There the Court observed:

> The fact that the board of education was compelled to buy supplies and services for Ford motor vehicles, and that such supplies, parts, and materials could not be purchased elsewhere in Webster County is not a defense. The statute makes no exception. Dealers in Ford parts, materials and supplies in neighboring counties could well have furnished these supplies to the board in such quantities that a supply could have been kept on hand.

*Id.*, 135 W.Va. at 86, 62 S.E.2d at 560. Similarly, in the present case other potential suppliers of gasoline and fuel oil are located in adjacent counties, and other potential sources of television program reception are available. *See supra* notes 3–4.

## IV.

### *The Superintendent's Ownership of Bank Stock*

A county superintendent of schools is subject to removal under *W.Va.Code*, 6–6–7 [1931], *see supra* note 1, for a violation of *W.Va.Code*, 61–10–15 [1977], *see supra* note 7. *See* syl., *West Virginia Education Association v. Preston County Board of Education*, 171 W.Va. 38, 297 S.E.2d 444 (1982); syl., *Hall v. Pizzino*, 164 W.Va. 331, 263 S.E.2d 886 (1980).

*W.Va.Code*, 18–9–6 [1973, 1987] provides that a county board of education may open a bank account or accounts in a depository or banks within the county; provided, however, that in determining the depository for board of education funds a *board member* who has a pecuniary interest in a bank within the county shall not participate in the determination of the depository for such funds. Thus, this statute carves out an exception to the application of *W.Va. Code*, 61–10–15 [1977] for the situation in which a member of a county board of education does not participate in the board's decision to place the board's funds in a bank within the county in which that member has a pecuniary interest.

*A fortiori*, a county superintendent of schools, who is not a member of a county board of education and who, therefore, has no power to vote on matters to be decided by the board, is not subject to removal from office for a violation of *W.Va.Code*, 61–10–15, as amended, as the result of owning stock of a bank acting as a depository for the board's funds, unless the county superintendent as a matter of fact had "any voice, influence or control" with respect to the selection of that bank for the board's funds.[12]

"To warrant removal of an official pursuant to *Code* 1931, 6–6–7, clear and convincing evidence must be adduced to meet the statutory requirement of satisfactory proof." Syl. pt. 9, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975), *questioned on another point, Lane v. Blair*, 162 W.Va. 281, 288 n. 2, 250 S.E.2d 124, 127 n. 2 (1978) (Miller and McGraw, JJ., concurring). *Accord*, syl. pt. 2, *George v. Godby*, 174 W.Va. 313, 325 S.E.2d 102 (1984); syl. pt. 2, *Kemp v. Boyd*, 166 W.Va. 471, 275 S.E.2d 297 (1981); syl. pt. 3, *In re Boso*, 160 W.Va. 38, 231 S.E.2d 715 (1977); *Smith v. Godby*, 154 W.Va. 190, 199, 174 S.E.2d 165, 172 (1970). Here the trial court found that the appellants/petitioners had failed to show by clear and convincing evidence that appellee Tassos as county superintendent of schools had participated in or had exercised "any voice, influence or control" with respect to the Board's decision to prefer in-county banks. Our review of the record indicates that this finding is not clearly wrong. "Findings of fact by a trial court will not be set aside unless clearly wrong." Syl. pt. 3, *Serge v. Matney*, 165 W.Va. 801, 273 S.E.2d 818 (1980). *See also* syl., *Chaves v. Blue Ridge Acres, Inc.*, 174 W.Va. 218, 324 S.E.2d 361 (1984); syl. pt. 1, *Bethlehem Steel Corp. v. Shonk Land Co.*, 169 W.Va. 310, 288 S.E.2d 139 (1982).

---

12. A county superintendent of schools is not a member of a county board of education but is the chief executive officer and secretary of the board. *W.Va.Code*, 18–4–10(1) & –10(7) [1967].

## V.

### Conclusion

In conclusion, what was said in *Alexander v. Ritchie*, 132 W.Va. 865, 874, 53 S.E.2d 735, 740–41 (1949), is also true here:

> We do not mean to impute to any of the defendants [appellees] in this case any immoral act, wrongdoing or moral turpitude. They have simply disregarded an imperative statute which calls for their removal. *Hunt v. Allen, supra.*
>
> If statutes protecting public funds are to have any effect and force they should not be emasculated by judicial interpretation and relaxation of their provisions. Common prudence dictates that men [or women] holding official positions must not deal with themselves in a private capacity, directly or indirectly.

Moreover, "[a]s worthy as public service in this capacity [as a member of a county board of education] is, we think it clear that the Legislature and this Court, in interpreting Code, 61–10–15, intended to remove from this important office any possibility of abuse." *Cimino v. Board of Education*, 158 W.Va. 267, 274, 210 S.E.2d 485, 490 (1974). Because of their indirect pecuniary interest in contracts of the Board with their private employers, appellees Grimmett and Honaker could, for example, "have failed to press the Government's position on items of cost vigorously enough; or [they] could have suggested acceptance by the Government of a proposal which, for one reason or another, should not have been approved." *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 558, 81 S.Ct. 294, 313, 5 L.Ed.2d 268, 293 (1961).

For the reasons stated in section IV of this opinion, the portion of the trial court's final order refusing to remove appellee Tassos from office is affirmed. On the other hand, for the reasons stated in section III of this opinion, the portion of the trial court's final order refusing to remove · appellees Grimmett, Honaker and Mock from office is reversed, and this case is remanded to the trial court for it to order the removal of appellees Grimmett, Honak-er and Mock from office, pursuant to *W.Va.Code*, 6–6–7, as amended.

Affirmed in part; reversed in part and remanded.